## THE STATE v. GEORGE GRIFFITH, Appellant.

### Division Two, December 22, 1925.

1. **JURY: Members of Secret Order.** A juror's membership in any order not shown to be unlawful in its object and purpose is not a proper ground of challenge.

2. **————: Previously Formed Opinion.** The qualifications required to be possessed by the panel of jurors are open minds and an understanding that, in the performance of their duty and in finding their verdict, they are to be governed by the evidence and the law as declared by the court, and a juror who meets this test cannot be excluded on the unsupported alleged theory that he had made up his mind to convict before being impaneled.

3. **INFORMATION: Intoxicating Liquor: Sale: Still: Possession: Nature of Crime Charged.** If each count of the information sets forth the constituent elements of the crime charged, and contains allegations apprising the accused of the nature of the crime, it is sufficient. A count of an information charging the felonious sale of intoxicating liquor commonly called hootch, moonshine, corn whiskey, sufficiently charges the offense denounced by Section 21, Laws 1923, page 242; and another count charging the felonious possession and use of a still, worm, doubler, worm tubs, fermenting tubs and barrels in the distillation and manufacture of intoxicating liquor for sale and transportation, sufficiently charges an offense denounced by Section 2, Laws 1923, page 237; and a count charging the unlawful possession of intoxicating liquor sufficiently charges an offense under Section 6588, Laws 1921, page 414.

4. **INTOXICATING LIQUOR: Moonshine, Etc.: Incongruous Statutes: Information.** The legal and practical effect of Section 21, Laws 1923, page 242, was to segregate moonshine, hootch, corn whiskey from the intoxicating liquor covered by Section 6588, Revised Statutes 1919, and to make their manufacture, sale, gift or transportation a felony, but leaving so much of Section 6588 in force as makes it a misdemeanor to sell, make, give or transport other intoxicating liquor not so enumerated by the Act of 1923. The two sections are confusing and incongruous, but an information charging that defendant sold "intoxicating liquor, commonly called hootch, moonshine, corn whiskey," charges a felony, and not simply a misdemeanor, and if sustained by proper proof will authorize a verdict fixing defendant's punishment at imprisonment in the penitentiary.

State v. Griffith.

5. **SEARCH WARRANT: Premises of Another.** Defendant cannot complain of illegality of a search warrant directing the officer to search the premises of another. The constitutional protection is purely personal.

6. **INTOXICATING LIQUOR: Instruction: Moonshine.** An instruction authorizing the jury to convict defendant of a felony if they find that he "did unlawfully and feloniously sell any quantity of intoxicating liquor, commonly called hootch, moonshine or corn whiskey," requires them to find that the liquor sold was hootch, moonshine or corn whiskey, and is in harmony with the statute.

7. ————: ————: **Brewing Utensil: Barrel Filled with Swill.** It is the unlawful use to which a utensil is put that determines its character as an unlawful instrument. Testimony that in a small house was found an iron barrel partly filled with "swill off of mash;" that the fluid and barrel were warm; that the bottom of the barrel was blackened by smoke, and stood on some strips of iron, underneath which had recently been a fire, and that at the top of the barrel was a hole into which the coil of a worm might be inserted if it was desired to use the barrel as the boiler or body of a still, will authorize a finding that the barrel was a brewing utensil used in the manufacture of intoxicating liquor, and an instruction telling the jury that if they find that defendant "did unlawfully and feloniously use a barrel, the same being a brewing utensil (if you find it so to be), in the process of manufacturing intoxicating liquor for sale", is not broader than the evidence.

8. ————: **Definition of Moonshine, Etc.** Where the instruction requires the jury to find that defendant sold "intoxicating liquor commonly called hootch, moonshine, corn whiskey" it is not necessary to define the words "hootch," "moonshine" or "corn whiskey," especially where the general term is defined and it is shown that the use of the liquors specifically designated would produce intoxication, or where a sample of the liquor is introduced in evidence.

9. ————: **Definition: Failure to Request.** A failure to define or explain a term used in an instruction is not error where no instruction requesting its definition or explanation is asked. And particularly is this true where the instructions given cover the facts of the case and correctly state the law applicable thereto.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 2329, p. 950, n. 1, 3; Section 2360, p. 966, n. 74; Section 2498, p. 1057, n. 24; 17 C. J., Section 3349, p. 87 n. 44. Indictments and Informations, 31 C. J., Section 180, p. 661, n. 95, 96; Section 257, p. 704, n. 92. Intoxicating Liquors, 33 C. J., Section 17, p. 496, n. 78 New; Section 194, p. 577, n. 78; Section 424, p. 714, n. 62; Section 547, p. 791, n. 46; Section 550, p. 794, 86, 87, 94 New. Juries, 35 C. J., Section 358, p. 332, n. 33 New. Searches and Seizures, 35 Cyc., p. 1270, n. 43.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Munger & Munger, J. W. Farris* and *F. M. Walker* for appellant.

(1)   Jurors should be free from bias and prejudice and should not know the facts in issue. Sec. 6632, R. S. 1919; Hunt v. Columbia, 122 Mo. App. 34; Carroll v. United Rys., 157 Mo. App. 264; McManama v. Railroad, 175 Mo. App. 49.   (2)   The jury was picked to convict. Therefore, motion to quash panel should have been sustained. State v. Powers, 136 Mo. 199.   (3)   The search warrant should have been quashed and the evidence obtained thereunder suppressed. State v. Owens, 259 S. W. 101; State v. Lock, 259 S. W. 124; State v. Tunnell, 259 Mo. 130; State v. McAnally, 259 Mo. 1042; State v. Smith, 262 S. W. 65.   (4)   The court erred in its given instructions as follows: (a)   Instruction one does not require the jury to find that the liquor in question was in fact "hootch," "moonshine," "corn whiskey," but permits the conviction of a felony on the mere finding that appellant sold intoxicating liquor, commonly called "hootch," "moonshine," "corn whiskey" whether or not the liquor sold was in fact, "hootch," "moonshine," or "corn whiskey," or beer, wine, rum or rye whiskey. Sec. 6588, Laws 1921, p. 414; Sec. 21, Laws 1923, p. 243; State v. Brown, 262 S. W. 711.   (b)   The second paragraph of instruction one is broader than the evidence in that there was no evidence that either of the barrels found was a "brewing utensil." Again, this paragraph is wholly unsupported by any evidence sufficient to support a verdict of guilty.   (c)   Instruction number two is erroneous in that, first, it is broader than either the information or the evidence.   (d)   It does not undertake to define "hootch," "moonshine," or "corn whiskey"

though that is the specific liquor interdicted in the statute, named in the information and for the sale of which appellant is now under sentence to the penitentiary as a felon. (e) This instruction assumes that the liquid exhibited in evidence was the identical liquid taken from appellant when such fact was not conceded, but was controverted. (5) There being no evidence that the liquid alleged to have been bought of appellant was in fact corn whiskey, or its other self under the name of "hootch" or "moonshine," and this prosecution having been conducted by the State throughout on the theory that appellant was guilty of a felony, the demurrer as to the second count of the information should have been sustained. (6) If count two of the information is to be construed as charging anything above a misdemeanor, then appellant's motion to arrest the judgment on that count should have been sustained for the reason that there was no specific and certain charge than any "hootch," "moonshine" or "corn whiskey" was sold. State v. Washington, 259 Mo. 339; State v. Keating, 202 Mo. 204; State v. Koock, 202 Mo. 235; Loan Guaranty Co. v. Kansas City, 200 Mo. 167; State v. Ferguson, 162 Mo. 675; State v. Burkes, 199 Mo. 271; State v. Mysenberg, 171 Mo. 1; State v. Barnes, 281 Mo. 519; State v. Wade, 267 Mo. 256; State v. Timeus, 232 Mo. 177; State v. Zingher, 259 S. W. 452; State v. Cox, 29 Mo. 475. (7) Motion in arrest of judgment as to count four of the information should have been sustained for the reason that such count alleges no violation of any law of this State as to any matter covered by the evidence and upon which he was convicted, that is to say, possessing and using "brewing utensils." Laws 1921, p. 414; Laws 1923, p. 242. (8) All criminal statutes must be construed strictly against the prosecution and in favor of the liberty of the defendant. State v. Owens, 268 Mo. 481; State v. Robinson, 253 Mo. 271; State v. Shortell, 174 Mo. App. 153; State v. McMahon, 234 Mo. 611; Riddick v. Governor, 1 Mo. 147; State v. Bryant, 90 Mo. 534; State v. McCance, 110 Mo. 398; State v. Reid, 125 Mo. 43; State v. Gritzner, 134 Mo. 512;

State v. Howard, 137 Mo. 289; State v. Butler, 178 Mo. 272; State v. Balch, 178 Mo. 392. (9) In that the fourth count of the information charged only a misdemeanor (the sale of intoxicating liquor) it was error to allow appellant to be convicted as for felony. (10) "Corn whiskey" has a well-defined, definite meaning. Standard Dictionary, 1913, pp. 583 and 2706; 13 C. J. 1237; Mullins v. Com., 79 S. E. 327; Wilburn v. State, 8 Ga. App. 31; Levy v. Uri, 31 App. D. C. 445; 4 Words & Phrases (2 Ed.) 68. It is the standard by which "hootch" and "moonshine" is to be measured. The three words simply mean corn whiskey. State v. Brown, 262 S. W. 711. Therefore, it was error to fail to define these words for the guidance of the jury.

*Robert W. Otto,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) The validity of the search warrant offered in evidence, and the validity of the search made under it by the sheriff and the admissibility of evidence obtained by such search cannot be questioned in this case. (a) There was no evidence offered in support of the motions to prove that the buildings searched by the officers were located on any premises owned or controlled by the defendant Griffith. An objection to an illegal search can be raised only by the owner or one in charge or control of the premises searched. Mo. Constitution, sec. 11, art. 2; State v. Zugras, 267 S. W. 806; Haywood v. United States, 268 Fed. 795; Lusco v. United States, 287 Fed. 69; Jones v. United States, 296 Fed. 632; Driskell v. United States, 281 Fed. 146; Chicco v. United States, 284 Fed. 434. (b) There was no evidence offered in support of the motions to show that the buildings searched were within the curtilage of anybody. Hutchins v. State, 59 S. E. 848; State v. Taylor, 45 Me. 322; Commonwealth v. Barney, 64 Mass. 482; Cook v. State, 83 Ala. 63; Curkendall v. People, 36 Mich. 309; People v. Chi-

agles, 142 N. E. 583; Francis v. State, 221 Pac. 785; Agnello v. United States, 290 Fed. 671; United States v. McBride, 287 Fed. 214; McClanan v. Chaplain, 116 S. E. 495; State v. Cobb, 273 S. W. 736. (2) The court committed no error in overruling defendant's motion to quash the information because of the improper joinder of different counts. All the offenses were properly charged in separate counts of the same information. Sec. 6596, R. S. 1919; State v. Berry, 255 S. W. 337. (3) The court committed no error in overruling the defendant's challenge of jurors for cause. State v. Gartland, 304 Mo. 87. (4) The court committed no error in the giving of instruction number one because of use of the word corn whiskey, as this court has held that hootch, moonshine and corn whiskey are synonymous. State v. Gatlin, 267 S. W. 797; State v. Brown, 262 S. W. 710. (5) The evidence offered by the State justified the jury in finding that the defendant had used an iron barrel described in the evidence as a still in the illicit manufacture of moonshine whiskey, and even though this barrel was not originally designed for use as a boiler or still, if as a matter of fact it was so used, the jury was authorized in convicting defendant. State v. Thogmartin, 270 S. W. 313; Sec. 2, Laws 1923, p. 237. The charge here is not "possession" but "use" of a utensil in the manufacture of liquor, and this case was prosecuted under the Act of 1923, which is entirely different from Sec. 6588, R. S. 1919, as amended in 1921. (6) The court committed no error in giving paragraph 3 of instruction number one: The evidence in support of this instruction was direct and positive and had no connection whatever with the search warrant. State v. Combs, 273 S. W. 1037. (7) There was sufficient evidence offered to carry the case to the jury on all counts submitted. State v. Concelia, 250 Mo. 421; State v. Poor, 286 Mo. 644; State v. Bowman, 243 S. W. 114; State v. Barrington, 198 Mo. 23.

WALKER, P. J.—Appellant was charged by information in five counts with having violated certain

provisions of the statute approved March 28, 1921 (Laws 1921, pp. 413-417), and April 23, 1923 (Laws of 1923, pp. 236-247), prohibiting the possession, manufacture, sale etc., of intoxicating liquors. At the close of the evidence a demurrer was sustained to counts numbered one and three. The jury returned a verdict of guilty upon counts two, four and five. Count number two charged the felonious sale of intoxicating liquor, commonly called "hootch," "moonshine," "corn whiskey" and the verdict fixed the punishment at two years' imprisonment in the penitentiary; count number four charged the felonious possession and use of a still, worm, doubler, worm tubs, fermenting tubs and barrels, in the distillation and manufacture of intoxicating liquor for sale and transportation, and that said articles were fit for use in the process of distilling and manufacturing intoxicating liquors, and the verdict of guilty fixed the punishment at two years' imprisonment in the penitentiary; count number five charged the unlawful possession of intoxicating liquors, and upon a finding of guilty appellant's punishment was assessed at a fine of two hundred dollars. From these verdicts he has appealed to this court.

One J. B. Allen was jointly indicted with the appellant, but upon a severance the latter was tried alone. The Sheriff of Stoddard County, in which the venue is laid, armed with a search warrant issued in the case against the appellant, went to the home of J. B. Allen to execute the same. The sheriff was accompanied by two persons, named Crane and McDougall, the justice of the peace and constable, respectively, of the township in which the warrant was issued and the search made, and the assisted the sheriff in making the search. In a smoke house on Allen's premises they found two or three gallons of moonshine or corn whiskey, a portion of which was offered in evidence and identified. At the time of the search and before the arrest of the appellant he stated to the sheriff in the presence of Crane and McDougall that "the liquor was his" and that Allen had nothing to do with it. The sheriff testified that in a

smaller house a short distance in the rear of the smoke
house he and those assisting him in the search found
an iron barrel partly full of "swill off of mash." The
fluid and the barrel were warm and the bottom of the
barrel, which was blackened by smoke, stood on some
strips of iron, leaving a space below where there had re-
cently been a fire. The inside of the building was smoked
up. The experience of the witness in locating and examin-
ing stills for the manufacture of liquor and what was
around them was shown, and he testified that he smelled
the swill and that it was "off of mash." The barrel was
the only thing he found that looked like a still; that he al-
so found three or four gallons of white mule or moonshine
in the smoke house; that his possession of a jug contain-
ing a part of this liquor had been uninterrupted from the
time it was found until the trial, except a short time when
it was in the possession of McDougall, the constable, who
assisted him in the search; that it was whiskey when he
emptied it into the jug and it was whiskey now and "you
wouldn't have to drink much of it to make you drunk;"
that the common names for this fluid were "white mule,"
"moonshine," whiskey," and "hootch;" that in a little
building back of the smoke house the witness, with the
justice and constable, also found some whiskey in jugs
and fruit jars; that he arrested the appellant and took
him and a jug of the liquor to the office of the justice of the
peace. That there was a hole in the barrel where a pipe
could be inserted to connect it with the worm of a still;
that he is familiar with the construction of stills and has
seen them in operation; that the evidence of fire having
recently been under the barrel, its warmth as well as that
of the swill therein, the character of the latter and the
finding of distilled liquor in the same building, is, as was
brought out on cross-examination by appellant's counsel,
the reason of the witness's conclusion that a still for the
manufacture of liquor had recently been in operation on
the premises he searched. The testimony of Crane, the
justice of the peace, and McDougall, the constable, who
assisted in the search is to the same effect as that of the

sheriff. One Albert Neal testified for the State that a short time before the raid and the search of the premises as set forth in the foregoing testimony, he bought intoxicating liquor from appellant; that it was white mule, sometimes called whiskey; that some people called it moonshine; that he bought it around back of Allen's smoke house from appellant and had theretofore bought whiskey from the appellant two or three times, more than a year before he made the last purchase. The reputation of Neal for truth and veracity was assailed by witnesses for the appellant.

No testimony was offered for the defense except that of the appellant, who denied the sale to Neal, and that of other witnesses to impeach the character of the latter for truth and veracity.

The appellant filed several motions, each of which were overruled, as follows: to quash the jury panel; to quash the information; to quash the search warrant and to suppress the evidence obtained by the officers in the execution of the search warrant.

I. The appellant complains of the action of the trial court overruling his motion to quash the panel of jurors. This motion alleged that the panel was composed largely of jurors purposely chosen from members of the Ku Klux Klan, who resided in the immediate vicinity of the home of the defendant; and that there were other jurors on said panel who had made up their minds on the facts and were therefore incompetent.

Jurors.

In a criminal case, and in fact in any other, a juror's membership in any order, not shown to be unlawful in its object and purpose, is not a proper ground of challenge. Such was not shown to be the fact in this case; nor did the examination show that the members of the panel were lacking in any of the qualifications required to be possessed by triers of the facts, viz: open minds and an understanding that, in the performance of their duty, they were to be governed by the evidence and the law as declared by the court and that they would be so gov-

erned in finding their verdict. [Sec. 6632, R. S. 1919; State v. Craft, 299 Mo l. c. 343 and cases.]    More is not required.    There is no merit in this contention and we overrule it.

II.    It is contended that the information is insufficient.    The offenses denounced are of statutory origin.    Count number two was drawn under Section 21, Laws 1923, page 242.    This statute is as follows:

*Information.*

"If any person shall manufacture, make, brew, distill, sell, give away or transport any 'hootch,' 'moonshine,' 'corn whiskey' shall be guilty of a felony, and, upon conviction thereof punished by imprisonment in the State Penitentiary for a period of not less than two years, nor more than five years, or by either a fine of $500 or imprisonment in the county jail for a term of not less than three months nor more than twelve months, or both. Provided: That this section shall not apply in the case of corn whiskey lawfully manufactured, transported, or sold."

Count number four was drawn under Section 2, Laws 1923, page 237, and is as follows:

"If any person shall use in this State any still, worm, doubler, or other distilling, or brewing equipment or utensils whatsoever, in the process of distilling, brewing, or otherwise manufacturing any intoxicating liquor for sale or transportation for sale contrary to the provisions of this act, he shall be deemed guilty of a felony, and, upon conviction thereof, punished by imprisonment in the State Penitentiary for a term of two years, and if any person shall have any such still, worm, doubler, or other equipment, or utensil whatsoever, fit for use in the distilling, brewing or manufacturing, of any intoxicating liquors, now in violation of this act, or any other law of this State, and shall not have used the same in brewing, or the manufacture of any such intoxicating liquor, he shall be deemed guilty of a misdemeanor and, upon conviction thereof, punished by a fine of not less than

one hundred dollars, nor more than one thousand dollars, and by imprisonment in the county jail for a term of not less than thirty days nor more than one year.''

Count number five was drawn under Section 6588, Laws 1921, page 414, which, so far as concerns the charge here made, is as follows:

''It shall be unlawful for any person, firm, association or corporation, his, its, or their agents or employees to manufacture, sell, possess, give away or transport intoxicating liquors within, import the same into, or export the same from the State of Missouri, except as hereinafter provided.''

The formal sufficiency of these counts is not challenged. Each is of statutory origin and the requirement of the rule of construction is met in that each sets forth the constituent elements of the crime charged. [State v. Brown, 262 S. W. (Mo.) 710.] In the setting forth of such elements within the meaning of the rule, it is, of course, necessary that the allegations made should be of such a nature as to apprise the accused of the nature of the crime with which he is charged, to the end that he may, under the right granted to him by the Constitution (Con. Mo., art. 2, sec. 22), be enabled to prepare his defense. That the information is ample to comply with this requirement its terms fully indicate.

Despite the formal sufficiency of these counts in the denunciation of statutory offenses it is contended that count number two does not, by its verbiage, charge a felony. This contention is based on what the appellant insists is an incongruity in the statutes involved.

Section 6588, Revised Statutes 1919, as amended (Laws 1921, p. 414), embodies a general prohibition against the manufacture, possession, gift, sale, transportation, importation or exportation of intoxicating liquors; and the use or possession of any of the instrumentalities therein named to be used or fit to be used for the production of intoxicating liquors. While the prohibitions of this section, as amended, were extended by the Act of 1921, the penalties prescribed for its violation re-

mained the same as in the original act (Sec. 6604, R. S. 1919), and being limited to a fine or imprisonment in a county jail or both, constituted, under our classification of offenses (Sec. 3714, R. S. 1919), misdemeanors. However, by a supplemental and amendatory act approved April 3, 1923 (Laws 1923, pp. 237-247), the manufacture, sale, gift or transportation of certain intoxicating liquors designated in Section 21, supra (on which count number two is drawn), as "moonshine," "hootch" or "corn whiskey" are prohibited, and the maximum punishment for a violation of the section is fixed at imprisonment in the penitentiary, thus classifying the offense as a felony (Sec. 3712, R. S. 1919). (The legal, as well as the practical, effect of Section 21 is to segregate the liquors therein named from the general class and to prescribe a heavier penalty for their manufacture, sale, etc.) Logically considered the wisdom of this character of legislation is subject to criticism. It begets confusion, not only in the construction but in the application and enforcement of the statutes. These difficulties arise in this case because of an attempt, without any apparent reason therefor, to legislate in regard to a portion of a class of subjects instead of confining the act to general terms, which would have included all the classes. The term "intoxicating liquors" is not only so well understood as to permit judicial notice to be taken of its character, no matter whether it be distilled, brewed or fermented, but our own statute, enacted soon after the passage of the Federal prohibition act, so clearly defined the term (Sec. 6602, R. S. 1919), that no difficulty need have been encountered in subsequent legislation on this subject. [So far as concerns the legal propriety of the words "hootch," "moonshine," "corn whiskey," in the information, used in conformity with the language of the statute, it may be said, although not given formal recognition by the lexicographers or embalmed in precedents, these words have, from continued use, become so embedded in our vernacular that their meaning is familiar to every one of general intelligence as designating intoxicating liquor,

311 Mo. Sup.—41.

illicitly distilled for beverage purposes. To the extent here indicated the definition given to these terms in State v. Brown, 262 S. W. (Mo.) 710, should be modified.] Under such circumstances of what everybody else knows we may take judicial notice. It was proper, therefore, in charging an offense under the statute, not only that the generic term "intoxicating liquor" be employed but that the specific terms "hootch," "moonshine," "corn whiskey" be used as definitive of the particular kind of such liquor sold. The use of the words, "commonly called" following the words "intoxicating liquor" in the information, detract in no wise from the directness of the charge, but serves to bring them clearly within the purview of the provisions of Section 21. These words, performing as they do the important function of identifying and classifying the offense, are as important as any other words required by the Constitution and the statutes to be used in denouncing the crime. Therefore it is a mere quibbling with words to decry their use. Isaac Watts, much given to laconics, tells us that "quibbles have no place in a search for the truth." As illy inappropriate are they in a search for error.

Count number four is tersely characterized by appellant as a "hybrid," whatever that may mean when used in discussing the validity of a criminal charge. It is contended that it conforms to no appropriate statute. It is enough to say that an analytical comparison of this count with Section 2, Laws 1923, p. 237, supra, will be ample to satisfy the reasoning mind that this charge is drawn in conformity with the provisions of that section. Thus framed it is not, as we have found in a general review of this information, subject to adverse criticism. A like reason may be adduced in support of the sufficiency of count number five.

The information having been held to be sufficient, the statutes on which it is based, regardless of their seeming incongruity and the difficulty of their interpretation, not being inhibited by any organic law, are clearly within

State v. Griffith.

the purview of legislative power and are not subject to tenable objection.

III. .Much pother is made concerning the illegality of the search warrant. Conceding this to be true the appellant has no ground of complaint. There is nothing in the record to show that the warrant was issued against any premises owned by or in the possession of appellant. The property subjected to search by the warrant was described therein by metes and bounds and there was no testimony to connect the appellant therewith. On the contrary, the testimony showed that the premises searched were those of "Mr. Allen," who, to use the language of one of the witnesses, "was living .there at the time." The protection of the Constitution, whether National (Art. IV) or State (Art. 2, Sec. 2), as we more elaborately held in State v. Fenley, 275 S. W. 1. c. 37, is purely personal. [*Vide* also Buchanan v. Comm., 275 S. W. (Ky.) 878.] The facts in that case were not materially different from those at bar and the ruling therein is apposite in the latter case. In the Fenley case we compiled the authorities defining the extent of the protection of the Constitution in the execution of a search warrant not necessary to be repeated here. A purely technical objection would have sufficed to dispose of this contention adversely to the appellant in this, that no specific reference to the constitutional provision claimed to have been violated is set forth in the motion for a new trial. [State v. Richardson, 267 S. W. (Mo.) 841.]

IV. Instruction numbered one, given at the request of the State, is assigned as error. It is as follows:

"The court instructs you that if you find and believe from the evidence that the defendant at and in Stoddard County, Missouri, on or about the 2nd day of January, 1924, did unlawfully and feloniously sell any quantity of intoxicating liquor, commonly called 'hootch,' 'moonshine' or 'corn whiskey' then you will find him guilty as charged in the second

count of the information, and assess his punishment at imprisonment in the State Penitentiary for a period of not less than two years nor more than five years; or by either a fine of $500 or imprisonment in the county jail for a term of not less than three months nor more than twelve months, or both such fine and imprisonment.

"The court instructs you that if you find and believe from the evidence that the defendant, at and in Stoddard County, Missouri, on or about the 3rd day of January, 1924, did unlawfully and feloniously use a barrel, the same being a brewing utensil (if you find it so to be) in the process of manufacturing intoxicating liquor for sale, then you will find him guilty as charged in the fourth count of the information, and assess his punishment at imprisonment in the State Penitentiary for the term of two years.

"The court instructs you that if you find and believe from the evidence that the defendant, at and in Stoddard County, Missouri, on or about the 2nd day of January, 1924, did unlawfully have in his possession any quantity of intoxicating liquor, then you will find him guilty as charged in the fifth count of the information, and assess his punishment at a fine of not less than $200, and not more than $1,000, or by imprisonment in the county jail not less than thirty days nor more than one year, or by both such fine and imprisonment.

"The court instructs you that you may fiind the defendant guilty of all the counts, or of any one of any number of the counts, and acquit him of the other counts, or you may find him not guilty of any of the counts, according as you may find and believe from the evidence in the case under these instructions."

The first objection is that the instruction does not require the jury to find that the liquor sold was hootch, moonshine, etc., but permits a conviction on a finding that appellant sold intoxicating liquor, commonly called "hootch," "moonshine," etc. This objection is the came as that urged against the information and has been disposed of adversely to the appellant's contention, in the

discussion of that phase of the case, in harmony with the subject-matter and purpose of the statutes and the recognized rules of construction. Our conclusion, therefore, in regard to the correctness of the information may be held applicable to the objection urged to this portion of the instruction.

The second paragraph of the instruction is objected to on the ground that it is broader than the evidence, in that there was no proof that the iron barrel, filled with warm "swill off of mash," was a "brewing utensil." To recapitulate, that the force of the contention may be measured by the facts, the sheriff and other witnesses who searched the premises found an iron barrel, such as is used in transporting oil, partly filled with "swill off of mash," sitting on some strips of iron over what had recently been a fire as indicated by the warmth of the barrel and its contents. It is clear from this testimony that the fluid in the barrel had undergone fermentation and by the application of heat thereto was about to be distilled. Furthermore, the barrel had a hole in the top into which the coil of a worm might be inserted if it was sought to use the barrel as the boiler or body of a still. Thus accoutered with all of the other incriminatory facts and circumstances the conclusion is authorized that it had been and was, immediately before its discovery by the officers of the law, being used for the illicit distillation of such intoxicating liquors as are defined in the information. Confronted with these facts no other reasonable conclusion is permissible than that the barrel, as thus used, constituted an essential part of a brewing equipment, the assembling of which is a necessary preliminary process to distillation or that it was one of the utensils requisite to the operation of an illicit still. It is the use to which an instrument or a utensil is put that determines its character. However lawful and essential to industrial life it may be if properly used, if its use be perverted it may become an active instrumentality in the commission of crime. The violations of the prohibition law are illustrative of this platitude. Stills

for the illicit making of intoxicating liquors are not usually caparisoned with parts manufactured for that purpose, but are assembled by the despicable class of criminals engaged in the violation of these statutes from things theretofore used in their separate capacities for legitimate purposes. An oil barrel, therefore, may be converted into a body or boiler of a still; a coil of copper or pipe of other metal may serve for a worm, and a barrel of water, through which the worm is to pass, the condenser, and any vessel may be used as a receiver. Thus, while not conforming to the requirements of the laboratory or the chemical manufactory, a device may be constructed, as was evidently done in this case, for the illicit distillation of intoxicating liquor, which, when dispensed, may serve to inflame the depraved appetites of those who drink it and the criminal greed of those who sell it. In the face of not only the attested but admitted facts, coupled with the attendant circumstances, it is (without intending to manifest impatience) a trifling with words and an attempted refining of technicalities to contend that the barrel used was not a brewing utensil or a part of an illicit still. The instruction, therefore, is not broader than the evidence, and this contention must go for naught.

Nor is it a fact that there was in the instruction an assumption as true of a controverted fact. The liquor, of which profert was made at the trial, was shown to have been in the possession of the sheriff and the constable from the time it was taken until it was offered in evidence. There was nothing to show that it had been in any way tampered with, or that it was other than the identical liquor which the appellant admitted belonged to him. Under this state of facts the court did not err in giving the second paragraph of the instruction.

In addition, no tenable objection can be urged to the instruction defining intoxicating liquor. It conformed to the language of the statute, Section 6602, supra, and was not otherwise obnoxious to just criticism.

. V.   It was not necessary to define in the instructions the specific terms, "hootch," "moonshine," "corn-whiskey" as used in the information following the words intoxicating liquors.   Definitions of terms, where they may not be comprehended readily by the average juror from all of the facts in the case, may be defined or explained in such a manner as to leave no doubt of their meaning. The reason for the rule did not exist in this case. The meaning of the general term was defined and it was shown that the use of the liquors specifically designated would produce intoxication. Moreover, it was shown that it was moonshine or corn whiskey and a sample of same was introduced in evidence. To add definitions to this proof for the further information of the jury was to assume that they did not possess ordinary intelligence. The time of the courts should not be consumed in useless formalities. In addition, a general rule of procedure is here applicable, in that a failure to define or explain a term used in a charge is not error in the absence of an instruction requesting its explanation. On account of the uniformity of the application of this rule it is scarcely necessary to cite cases in support of it. Especially is this true where, as at bar, the instructions given cover the facts of the case and correctly state the law applicable thereto.   This having been done, in what respect is the appellant injured? If the obsequious worshiper at the shrine of precedent, that Joss of common-law procedure, should require confirmation of the correctness of the foregoing conclusion the same may be found in the references to Missouri and other cases in notes to Sections 2360 and 2498, 16 Corpus Juris, pp. 966, 1056.

There was no error meriting a reversal in this case. The judgment of the trial court is affirmed.   All concur.