## STATE OF MISSOURI

### AT THE

### APRIL TERM, 1926.

*(Continued from Vol. 314.)*

THE STATE v. WILLARD MILSTEAD, Appellant.

Division Two, May 28, 1926.

1. **EVIDENCE: Incriminating Facts: No Explanation: Silence of Defendant.** A defendant, without attempting to rebut incriminating facts, cannot, by merely remaining silent, escape the natural and reasonable inference to be drawn from such facts; and the principle is the same in regard to evidence, other than his own, which is available to him, but not to the State.

2. ———: ———: ———: ———: **Comment on Failure to Testify.** The statute (Sec. 4037, R. S. 1919) providing that if the accused shall not avail himself of his right to testify, "it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place," does not prevent the natural and reasonable inference to be drawn from incriminating facts where no effort is made by him to explain such facts by other evidence available to him, although he does not himself testify. To deduce a natural and reasonable inference from incriminating facts, unexplained where explanation is available, is not to comment on defendant's failure to testify; nor can the argument of counsel be taken on an explanation.

3. ———: ———: ———: ———: **Manufacture of Intoxicating Liquor: Sufficient Evidence.** The information charged that defendant and three others unlawfully manufactured hootch, moonshine, corn whiskey, and the evidence sufficiently establishes the **corpus delicti** at an old two-story build-

(1)

ing on a farm on which in a near-by dwelling house one of the other defendants resided, but defendant contends that he had nothing to do with the manufacture, but had gone to the building, which was not occupied as a dwelling, to buy whiskey. About eight o'clock of a November evening he drew up to the building in a car, and some one came out and carried a hundred-pound sack of chops into the house, and in a search barrels of mash, gallon jugs, corn whiskey, fifty empty sugar and burlap sacks, and other utensils and equipment indicating the manufacture of corn whiskey on a large scale, were found in the house. Defendant was found concealed in the attic under the rafters. There was evidence that he had recently made five or six trips to the house, along the private road that led only to the house; that a short time before he had bought seventeen hundred pounds of sugar from three different merchants, and that at the time he was found hid in the attic he had no liquor in his possession. He did not attempt to account for the sugar, and no reason appears why evidence was not available to explain the purpose for which he got it or what he did with it, and it does not seem impossible that, without testifying himself, he could have offered evidence to show he went to the house to buy whiskey, if such were the fact, and to show what was in the sack and why he hauled it in his car. **Held,** that the incriminating facts, wholly unexplained, authorized a natural and reasonable inference that defendant was unlawfully engaged in the manufacture of corn whiskey, and his conviction violated no provision of the statute (Sec. 4037, R. S. 1919) relating to the failure of an accused to testify.

**4. ARGUMENT TO JURY.** Unless the motion for a new trial assigns the remarks of the prosecuting attorney in his argument to the jury as error, such assignment cannot be considered on appeal.

**5. JURY: Misconduct: Separation: No Timely Objection.** A judgment of conviction will not be reversed on account of the misconduct of the jury unless it affirmatively appears that defendant and his counsel were ignorant of their misconduct until after the trial. It is not sufficient that defendant's counsel did not consent to the separation of the jury at the noon hour, but in order to avail himself of alleged error on the part of the court in permitting them to separate defendant must have protested and made his objection at the time.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 1022, p. 540, n. 72; Section 1023, p. 541, n. 77; Section 2242, p. 898, n. 94; Section 2249, p. 903, n. 59; Section 2250, p. 904, n. 73; p. 905, n. 74; 17 C. J., Section 3332, p. 62, n. 88; Section 3349, p. 87, n. 43, 44. **Intoxicating Liquors,** 33 C. J., Section 502, p. 758, n. 80; Section 541, p. 786, n. 52.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*John H. Taylor, O. O. Mettle, L. W. Reed* and *Thos. H. Hicklin* for appellant.

There is no evidence in this case that can be held to do more than create a mere suspicion that defendant was guilty as charged. This court has repeatedly held that it will not sustain a conviction under such circumstances, however strong the suspicious circumstances might be. State v. Scott, 177 Mo. 673; State v. Ballard, 104 Mo.

637; State v. Elmer, 267 S. W. 954. See also, State v. Woodson, 175 Mo. App. 393; State v. Ridge, 275 S. W. 60.

*North T. Gentry,* Attorney-General, and *Harry L. Thomas* and *A. B. Lovan,* Special Assistant Attorneys-General, for respondent.

(1) The evidence is sufficient. The circumstances of defendant's presence at the scene of the crime, his purchase of large amounts of sugar immediately prior to his detection, and his actions upon arriving at the house on the night of his arrest, are substantial and convincing evidence of guilt. State v. Bennett, 270 S. W. 297; State v. Gatlin, 267 S. W. 797; State v. Cardwell, 279 S. W. 99. (2) There was no error in permitting the jury to separate. The affidavits filed by the defendant indicate that he and all of his counsel were present in the court room and sat without objection when the separation was permitted. The affidavits do not even allege prejudice by reason of the separation and this alleged error is not before the court for review. Appellant has failed to aver or to show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial. State v. Cooper, 271 S. W. 471; State v. Robinson, 117 Mo. 649; State v. Barrington, 198 Mo. 23; State v. Richardson, 194 Mo. 326; State v. Tucker, 232 Mo. 1.

WHITE, J.—Information was filed in the Circuit Court of Daviess County, charging defendant Willard Milstead, Allen Ayers and Harry Noah, with unlawful manufacture of hootch, moonshine, corn whiskey. Noah absconded. Change of venue was awarded to Livingston County, where severance was granted and Milstead tried, January 8, 1925. The jury returned a verdict finding him guilty as charged, and assessed his punishment at two years' imprisonment in the State Penitentiary. From that judgment he appealed.

I. Appellant assigns error to the action of the trial court in overruling his demurrer to the evidence. Since that is the particular point relied upon for reversal, it is necessary to set out the evidence at some length.

**Unexplained Incriminating Facts.**

In November, 1924, Harry Noah, with his wife and two children, lived as tenant on a farm known as the Chester Kingsley farm, near Gallatin, in Daviess County. On that farm was an old two-story building which had been used as a dwelling, but was not occupied as such at the time of the alleged offense. It was near a new house in which Noah lived. About eight o'clock P. M., November 15, 1924, five men, Dean Leopard, Prosecuting Attorney; Frank Gildow, Sheriff; H. B. Dilley, Deputy Sheriff of Daviess County; George W. Sands, and Fred Smith, drove to a point near the old house. They secretly

approached the place and, while they waited in concealment, a car was driven up to the front of the house by the defendant, Willard Milstead, whose voice they recognized. There was a light in the old house. Mrs. Harry Noah came to the door and Milstead called to her: "Tell those fellows to come out and help carry in this stuff." Milstead then said: "They brought in old Bill Cummings and two stills from Pattonsburg, to-day." Someone came out and either that person or Milstead carried a sack into the house. Dilley testified that it looked like a hundred pound sack. Mrs. Noah immediately went home. An unbroken sack of chops was later found in the old house. Some of the party testified that they got a position from where they could see into the old house, and saw three men there. The sheriff and his party went to the door and knocked. Harry Noah opened the door, saw who it was, and immediately slammed the door, according to Dilley, remaining himself on the outside. The door was fastened by a spring lock and Noah said he could not get it open. At the sheriff's direction Dilley kicked in the door. Only Noah was present. In searching the lower floor and the upstairs they found twenty-one barrels of mash, about one hundred one-gallon jugs, several gasoline burners supplied by pressure tanks, about seven gallons of corn whiskey, about fifty empty sugar and burlap sacks, utensils and equipment used in the distillation of corn whiskey, indicating the manufacture of corn whiskey on a large scale. In fact, it is not denied that the *corpus delicti* was sufficiently established. It is only claimed that Milstead had nothing to do with the manufacture.

The sheriff's party were unable to find the defendant on the first or second floor, but upstairs in the ceiling the plastering was knocked off and a hole was made into the attic under the roof. There was no ladder to approach that place, but Deputy Dilley with assistance climbed up there, found Ayres and brought him down. Ayres said that Milstead was not there. After further search Dilley made a second trip into the attic, found Milstead hid under the rafters and brought him down.

It was shown by a witness living in the neighborhood that Milstead had quite recently made a number of trips, five or six, to that place, which set back and was approached by a private road, so that the neighbor knew that anyone going along that private road would have no other objective than the Noah place. It was further shown that Milstead, a short time before the arrest, had bought 1700 pounds of sugar from three different merchants in Gallatin.

Mrs. Noah, a witness for defendant, testified that her husband and one Ossie Mills owned the still and equipment, and that Ayres and Milstead had no interest in it. Her evidence is quite indefinite. Evidently she attempted to conceal what she did know about the

business except the connection of her husband with it. She seemed afraid that she might be accused. Apparently she did not know enough about it to know whether Milstead had anything to do with the operations. It was shown that Harry Noah was quite poor, and not able to finance operations on the scale on which the manufacture was conducted. Mrs. Noah said she did not know where Noah got the chops, sugar or yeast used. Milstead did not take the stand. His counsel in his opening statement said that Milstead was there for the purpose of buying liquor and had no interest in its manufacture, and in the argument here it is said that he hid away in the attic because he didn't want to be caught there even in that business. It was shown that a great many other persons visited the Noah premises for a few months prior to the raid, presumably for the purpose of purchasing liquor. Milstead's case differs from the others in that he was shown to have gone there more frequently than was necessary to purchase liquor. He was hiding in the attic. He had no liquor in his possession. There was nothing from which he could be charged with violating any law excepting the manufacture of liquor. There was no other reason to hide except, as he claims, the disgrace of being caught in attempting to buy liquor. The jury could very well infer from his frantic effort to escape detection the night of the raid that he feared a charge of complicity in the manufacture. Milstead made no attempt to account for the sugar which he bought in such large quantities. He was not shown to have any business which called for it, nor was any kind of an explanation attempted. It was bought in sacks, and empty sugar sacks were found in the old house where the manufacturing was done. He made unnecessarily long visits to Noah's house if he went there only to purchase. It is not denied that he drove up to the house on the night of the raid and brought a sack of something which was carried into the house. Nothing is mentioned as being found in the house which explains what was carried in, except a sack of chops. No attempt was made at explanation of that.

Section 4037 provides that if the accused shall not avail himself of his right to testify at the trial, "it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

The defendant did not testify. To say that he did not offer evidence to explain where he got the sugar, what was in the sack he hauled to the Noah place, nor why he went there so often, is not to comment upon his failure to testify. We cannot take the argument of counsel as an explanation of why he went there. No reason appears why evidence was not available to explain the purpose for

which he got the sugar and what he did with it. Likewise it does not seem impossible that Milstead, without himself testifying, could have offered evidence to show he went there to buy whiskey, and to show what he hauled there in his car.

It has been held that a defendant, without attempting to rebut incriminating facts, cannot escape the natural and reasonable inference deducible from such facts by merely remaining silent. [State v. Hillstron, 150 Pac. 938; 16 C. J. 541.] That is ruled where no statute such as ours protects a defendant from comment upon or consideration of his failure to testify. But the principle is the same in regard to evidence other than his own, available to defendant but not to the State.

The evidence was sufficient to go to the jury and support a finding that Milstead was engaged in the manufacture of liquor.

II. Appellant assigns error to something said by the prosecuting attorney in his opening statement. There is no assign-

**Argument to Jury.** ment of such error in the motion for new trial, therefore we cannot consider it.

III. Complaint is made that the court erred in permitting the jury to separate after they had been sworn to try the case. That alleged error was assigned in the motion for new trial,

**Separation of Jury.** and supported by the affidavits of defendant's attorneys who stated that the jury was permitted to separate from twelve until one o'clock without consent of counsel for defendant.

In opposition to the motion the State filed the affidavits of the twelve jurors, each of whom stated that they were permitted by the court to separate between twelve and one o'clock P. M., that he talked to no one concerning the case, and did not hear the case mentioned during the time.

The record does not show that the defendant's counsel made any objection until he filed his motion for new trial. It was said by this court in the case of State v. Cooper, 271 S. W. 471, 1. c. 475, that a case will not be reversed on account of misconduct of the jury unless it affirmatively appears that the defendant and his counsel were ignorant of the misconduct until after the trial. If the separation of the jury with the consent of the court was misconduct, no prejudice is shown and no prompt action taken to correct the error at the time. It is said that the defendant's counsel did not consent to the separation of the jury. That is not sufficient. In order to avail himself of the alleged error in this respect the defendant must have protested and made his objection at the time.

The instructions in the case were complete, and  as favorable to the defendant as he could wish.

The judgment is therefore affirmed.  All concur.