THE STATE v. H. C. KING, Appellant.—53 S. W. (2d) 252.

Division Two, September 28, 1932.

*Earl E. Roberts* for appellant.

*Stratton Shartel,* Attorney-General, and *J. K. Roach,* Assistant Attorney-General, for respondent.

ELLISON, J.—The appellant was convicted by a jury in the Circuit Court of Crawford County of transporting moonshine, and his punishment assessed at two years' imprisonment in the penitentiary. The principal contention made before this court is that the verdict was not supported by substantial evidence. Complaint is made also of the admission of incompetent and prejudicial evidence; and there is a further assignment that the information alleged and the proof showed only a misdemeanor, if anything, whereas the State's main instruction submitted the case as involving a felony charge and the defendant was convicted of a felony.

The defendant, King, lived on U. S. Highway 66 in Crawford County. The sheriff of the county testified he had occasion to visit the premises of the defendant about the first day of May, 1929. Being asked for what reason or purpose he went to the home of the defendant he answered: "I went there with a legal search warrant." Defendant's counsel objected and moved that the answer be stricken out. The objection was sustained and the witness continued, saying he found the defendant away from home and learned he was at Cuba attending a sale. The sheriff went on to Cuba and there was informed the defendant had been seen going east on Highway 66. Following along in that direction with his deputy Chris Enke, and James Ransom, marshal of Steeleville, the officers reached a point near Bourbon, 16 miles east of defendant's home, when they passed a restaurant known as Dew Drop Inn or Ozark Inn and noticed the defendant's car parked there headed west. They stopped and found the defendant and his wife just getting up from a table after having eaten lunch. It was about noon. The sheriff says he told the defendant he had been up his place "and had found certain things there." On objection the statement was stricken out and the jury directed to disregard it. The sheriff then said he told the defendant he had a search warrant for his place on the road and had been up there. On objection the court ruled the statement as to the search warrant was inadmissible and struck it out. Being asked to tell what was said and done between him and the defendant there at the time, the sheriff answered: "Well, I also arrested him on the search warrant I had been up to his place on." On objection of defendant's counsel this answer was stricken out as being improper and prejudicial.

The sheriff then continued his story saying he told the defendant he would have to come to Steelville (the county seat) and directed him to drive his car ahead of the sheriff's car. The defendant agreed

and as he started toward his automobile the sheriff asked him if he had anything in it and the defendant answered "Yes." The next question propounded by the State's counsel was: "What did he have in his car?" The witness answered that Deputy Sheriff Enke opened the car door and inside were five one-gallon jugs of alcohol and a case of empty flat pint bottles. Without having previously objected to the question, defendant's counsel then interposed objection on the ground that the sheriff had no search warrant for the car and was not shown to have had any reasonable ground for suspicion at the time that there was contraband liquor therein. The objection was overruled and exceptions were saved.

The liquor was in the back part of the car which was a two seated Pontiac. The inner tube of an automobile tire was passed around the five jugs, apparently to keep them from breaking. The sheriff drove his car back to Steelville and Deputy Sheriff Enke followed in the defendant's car. Samples were taken of each of the five bottles and sent to the Federal Prohibition Department in St. Louis for analysis. One sample was introduced at the trial and the government chemist testified it was moonshine alcohol. The sheriff was later recalled to the stand and said he didn't know how defendant's automobile happened to be at Dew Drop Inn. He didn't see the defendant move the car there until directed to do so, and didn't know whether the defendant had driven the car with the liquor in it before that or not.

Deputy Sheriff Enke testified he was standing close to the defendant's automobile when the defendant and the sheriff approached from the restaurant. Enke had already opened the door and looked in the automobile and he said to the sheriff "there is a whole lot of liquor in here." Defendant's counsel objected on the ground that the officers had no search warrant and the objection was overruled and exceptions saved. Enke said he could not remember whether he heard the sheriff ask the defendant if there was anything in the car, but thought he did hear the question and the defendant's answer that "he had some stuff in there." That was after Enke had already opened the car door and looked inside.

On cross-examination, Enke said he saw the liquor in the car while he was standing on the ground. There was a gunnysack lying over the top of the jugs but he could see them, and could have seen them before he opened the door if he had looked in the window—though he didn't look. At this point defendant's counsel objected that the foregoing testimony encroached on the constitutional rights of the defendant as a citizen of the State, there being no search warrant for the car, and moved that it be stricken from the record and the jury instructed to disregard it. The objection was overruled and the exceptions saved. A little further on Enke stated he thought the sheriff asked the defendant if he had anything in the car and defend-

ant answered in the affirmative *about the time* he (Enke) opened the car door and looked in.

The witness said he didn't see any groceries or anything else in the car except the liquor, that is, nothing else that could have been the "stuff" the defendant referred to when he answered the sheriff. And he said further he did not see the defendant's car move at any time before the party started to Steeleville and didn't know who put the liquor in the automobile or whether or not the defendant transported the liquor in the car to the place where the officers found it parked.

John Ransom, the marshal of Steelville who accompanied the sheriff when they went to the defendant's residence, was asked what was done there. The witness answered that they went to the house and inquired about Mr. King (the defendant). The next question was "Did you do anything else while you were there?" Defendant's counsel objected that the question inquired into an extraneous matter not connected with the case, and was prejudicial. The court permitted the question to stand and exceptions were saved. Then followed these questions and answers: "Q. What did you do around the place there? A. We searched around the place there. Q. Did you know whether or not the sheriff had a search warrant? A. Yes, sir. Counsel for defendant: We object to that, the search warrant is irrelevant and immaterial, and doesn't prove anything in this case. By the Court: If it is in this case it is proper and if it wasn't it isn't. (Exceptions saved)."

Further on Ransom was asked if he looked into the defendant's car while they were at the Dew Drop Inn and what, if anything, he saw therein. Objection was made to this question on the ground that the officers had no search warrant and no right to search the car, in violation of the liberty of a private citizen. Objection was overruled and exceptions saved. The witness answered, as had the other two, that they found five jugs full of liquor and a case of empty pints. He further said that when the sheriff asked the defendant what he had in his car the defendant answered "he had some stuff in his car" but didn't say what. On cross-examination Ransom said he didn't notice whether there were any other articles in the car. The car stood heading west—toward the defendant's home.

At the close of the State's case the defendant requested an instruction in the nature of a demurrer to the evidence, which was refused by the court. The defendant did not testify. Only one witness was produced on that side of the case, a young man named Bsham who was employed as a waiter at the Dew Drop Inn. He said the defendant and wife came to the Inn the day of their arrest about 11:30 A. M. When they drove up they did not turn their car around—he didn't see them turn around. While the defendant and his wife were in

the restaurant the witness saw some men drive a car up by the side of the defendant's car, and noticed him "monkeying" between the two cars. On cross-examination the witness said he didn't, in particular, see the defendant's car pull up and stop, but he knew it was standing headed west. With regard to seeing a man "monkeying" between the two cars the witness said he meant that the man was "fooling around, walking around," but that he didn't see him put anything in the defendant's car.

■ I. One assignment made by the appellant is that the information charged and the proof showed (if any offense) only a misdemeanor. The case cited on this point is State v. Clark, 220 Mo. App. 1308, 289 S. W. 963. This decision calls attention to the fact that the transportation of "intoxicating liquor" in violation of what is now Section 4481, Revised Statutes 1929, is a misdemeanor, whereas the transportation of "hootch," "moonshine" or "corn whiskey" is a felony (Sec. 4500, R. S. 1929). The opinion goes on to say "The terms hootch, moonshine, corn whiskey would always include intoxicating liquor, but the words intoxicating liquor would not always include hootch, moonshine, corn whiskey."

If we understand appellant's contention, which is not elaborated in the argument in his brief, it is this. The information in the instant case charges the transportation of "certain intoxicating liquor, to-wit, five gallons of moonshine." Appellant apparently takes the view that since the words "intoxicating liquor" are used the offense alleged can be only a misdemeanor under Section 4481. But this is incorrect. The information goes on to say "to-wit, five gallons of moonshine." While it is true in a technical sense, as the Clark case holds, that the expression intoxicating liquor may not always include moonshine, yet it may sometimes do so, for, according to the decisions in this State moonshine is simply a particular kind of intoxicating liquor, viz., "intoxicating liquor illicitly distilled for beverage purposes," (State v. Griffith, 311 Mo. 630, 641, 279 S. W. 135, 138; State v. Barr, 326 Mo. 1095, 1102, 34 S. W. (2d) 477, 480); or "spirituous liquor, illegally distilled or manufactured," (State v. Cook, 318 Mo. 1233, 1242, 3 S. W. (2d) 365, 369; 39 University of Missouri Bulletin (Law Series) p. 16).

■ The information was not, therefore, duplicitous in using both terms—intoxicating liquor and moonshine—the latter being employed to define and limit the former. In State v. Griffith, supra, 311 Mo. l. c. 636, 642, 279 S. W. l. c. 136, 138, the information alleged the sale "of intoxicating liquor, commonly called 'hootch,' 'moonshine,' 'corn whiskey,'" and it was held good. In State v. Talken, 316 Mo. 596, 599, 292 S. W. 32, 33, the information charged the transportation of five gallons of moonshine whiskey, and this court said, arguendo,

if complaint were made of the *omission* from the information of an averment that moonshine whiskey is intoxicating liquor, it could be answered the statutes recognize that fact and courts take judicial notice of it. We think the information was sufficient to charge a felonious transportation of moonshine in violation of Section 4500, Revised Statutes 1929, and that there was substantial evidence to support it—so far as concerns the kind of liquor involved.

■ II. The next assignment is that the verdict was unsupported by substantial evidence: (1) because there was no proof the defendant had moonshine in his automobile, except such as was obtained by an unlawful search without the aid of a search warrant; (2) and no proof that the defendant transported the moonshine, that is to say, no evidence showing he drove the automobile while the moonshine was in it.

On the first point, appellant assumes the evidence of the finding of the moonshine in the car was erroneously admitted and must be disregarded because it was obtained without a search warrant. Laying every other consideration aside, this is not the law for the reason that appellant made no move to suppress the evidence until the trial was in progress and the proof offered. "When evidence is offered and objection that it was obtained by illegal means is then made for the first time, the court will determine only whether the evidence is relevant and competent. It will not pause to determine the collateral question as to how the evidence was obtained." [State v. Owens, 302 Mo. 348, 359, 259 S. W. 100, 102, 32 A. L. R. 383.] A motion to suppress the evidence must be filed before the trial. [State v. Wagner, 311 Mo. 391, 413, 279 S. W. 23, 29.]

■ The second point under this assignment presents a serious question: was there any substantial showing that the liquor had been transported by the defendant? Though the officers had searched his home there is no evidence they found there any liquor like that discovered in his car. The car had been parked at Dew Drop Inn for about a half-hour before the officers arrived; and they all testified they did not know when or by whom the liquor was put in it, or whether he drove it afterward until ordered to do so by the officers. Are these facts not equally consistent with the theory that the cargo was loaded at the Inn and that the defendant was about to take it home. In this connection the fact is to be remembered that he had 5 gallons of whiskey in bulk and a case of empty pint bottles, indicating preparations for some retailing operation.

The State has cited five decisions of this court in support of its contention that the evidence was sufficient to support a conviction, and therefore to show transportation. We have examined them and many others. Without burdening the opinion with an enumeration

thereof, it will be enough to say we think all of them except two are not in point because in each the vehicle by which the transportation had been effected was seen to be in motion and thereafter was under observation of the State's witnesses until the liquor was discovered, from all of which it sufficiently appeared the liquor had not been put in the vehicle after it stopped, but must have been in it while it was moving.

The two cases which call for consideration are State v. Janes, 318 Mo. 525, 1 S. W. (2d) 137, and the companion case of State v. Smith (Mo.), 300 S. W. 1081. There a deputy constable saw a Buick roadster and a Ford coupé stop at a secluded spot some distance away. The occupants got out and moved back and forth, apparently carrying something. The constable went to investigate having them under observation until he got to where they were. By that time the back compartments of both cars had been closed and locked and the parties refused to submit to a search. The constable arrested them and subsequent investigation disclosed that the Buick automobile had a considerable quantity of intoxicating liquor in it. The two occupants thereof, Janes and Smith, were separately prosecuted for transportation under Section 4503, Revised Statutes 1929.

The constable admitted on the stand he did not know whether the Buick automobile carried the liquor at the time he saw it moving, or whether the contraband had been transferred to it from the Ford after both cars stopped, but he said one or the other or both automobiles must have had liquor in them as there was no other place it could have come from. On defendants' demurrers to the evidence in each case this court ruled that while presumptions do not run backwards, yet proof of the existence of a fact at a given time sometimes warrants an inference of its existence immediately theretofore; and that since there was no conclusive evidence the liquor had been put in the Buick car after it stopped. and in view of the obviously surreptitious meeting of the two cars. the facts that both were equipped for hauling liquor. that the drivers appeared to be experienced in the business, and that no explanation of the transaction was offered by the defense. the case was for the jury on the question of transportation.

On this last point the opinions acknowledged there can be no encroachment on the defendant's constitutional guaranty against self-incrimination or his statutory immunity from prejudicial inferences drawn from his failure to testify, Section 23, Article II, Constitution of Missouri; Section 3693, Revised Statutes 1929; but said the explanatory evidence might have come from other witnesses, or the lack thereof have been accounted for. This. as stated above, was ruled though the defendant stood on a demurrer to the State's evidence. Another case along the same line is State v. Milstead, 315 Mo. 1, 285

S. W. 429, though in that case the defendant did not stand on a demurrer, but·merely failed to testify.

On the other hand, in State v. Perkins (Mo.), 18 S. W. (2d) 6, the facts were that a deputy constable saw the defendant drive north in an automobile along a road past his farm and disappear over a hill at a railroad crossing. Within five or ten minutes he returned. Before anyone had passed the constable went to investigate and found a gallon jug of whiskey on the railroad right of way partly covered with recently pulled green weeds. Close by human footprints were discovered, and just beyond the railroad crossing were tire tracks where an automobile had turned around and gone back south, these corresponding with the fresh tire prints along the course the defendant's car was seen to have taken. During the afternoon the defendant drove past the spot where the whiskey was concealed about every 30 minutes, and that night he was caught when he and another man came there, turned off the car lights, and were in the act of taking possession of it.

Being charged with transportation of the liquor, the defendant stood on a demurrer to the State's evidence and was upheld by this court, the opinion referring to the oft repeated rule that where the State relies on circumstantial evidence alone, the circumstances "not only must be consistent with the hypothesis of defendant's guilt, but must be inconsistent with every other reasonable hypothesis, including the hypothesis of his innocence." The court said there was no evidence showing the defendant had transported the whiskey to the place where it was found; that it might have been left there by someone else; and that a conviction cannot be based on mere suspicion or conjecture.

And in State v. Hardy (Mo.), 326 Mo. 969, 34 S. W. (2d) 102, a State's witness saw D, a suspicious character, put a package in a car parked on the street. He called the city marshal who arrived just as the defendant and D were seated in the car and about to drive away. The officer accosted them and the defendant said "I will leave town right away." A search of the automobile revealed two gallon jars of moonshine and a third partly full. The defendant told three different persons he had got the liquor near Kansas City and where he was going. He was prosecuted for transporting the liquor. This court said his demurrer to the State's evidence should have been sustained; that there was no proof showing who drove the car to the place where it was parked or that the moonshine was in it at that time; and that all three jars of liquor might have been put in the car by D at different times just as he had been seen to put the one "package" in it. This case, like the Perkins case, supra, says circumstantial evidence sufficient to support a conviction must be in-

consistent with any reasonable theory of the defendant's innocence, and that mere suspicion, however strong, will not suffice.

Under these decisions, and from our own appraisal of the evidence, we think the State failed to make out a prima-facie case of transportation—unless it can be said, on authority of the Janes and Smith cases, the defendant's failure to explain his possession of the liquor (by testimony other than his own) tipped the scales against him. In our opinion his demurrer to the State's evidence ought to have been sustained, and if he had stood on it we should so rule: for certainly a defendant, attended by the strong presumption of innocence, should not be required to meet the State's case when the State, unassisted, has made no case. This is the law even in civil cases. [Burnside v. Doolittle, 324 Mo. 722, 732, 24 S. W. (2d) 1011, 1016; see, also, Frohman v. Lowenstein, 303 Mo. 339, 362, 260 S. W. 460, 466.] As stated above the well settled rule is that circumstantial evidence to support a conviction must be consistent with the hypothesis of the defendant's guilt and inconsistent with any reasonable theory of his innocence. If the State's evidence goes that far it makes a prima-facie case whether the defendant comes forward with evidence or not; if not, the State fails. The defendant is not bound to explain away facts merely because they raise a suspicion of his guilt, for such a showing does not make a submissible case.

We do not understand the Janes and Smith cases on a careful reading to hold otherwise. It will be recalled the opinions therein said there was no *conclusive* evidence the contraband liquor had been transferred from the Ford to the Buick after they stopped. If not, it must have been in the Buick when it drove to the meeting place, in view of the fact that the constable had both cars under observation all the time and said the liquor necessarily was in one or the other of them. There was therefore a question for the jury as to whether the Buick car had transported the liquor to the spot where the two cars were discovered.

Neither does State v. Milstead, supra, 315 Mo. 1. c. 5, 285 S. W. 1. c. 431, run counter to the views here expressed. This statement appears in that case:

"It has been held that a defendant, without attempting to rebut incriminating facts, cannot escape the natural and reasonable inferences deducible from such facts by merely remaining silent. (Citing cases from other jurisdictions.) That is ruled where no statute such as ours protects a defendant from comment upon or consideration of his failure to testify. But the principle is the same in regard to evidence other than his own, available to defendant but not to the State."

It will be noticed the excerpt says, first, the facts must be *incriminating,* and second, the evidence to rebut them *must be available to the defendant but not to the state.* Concerning this last require-

ment we shall have more to say in the paragraphs following.

■ The above discussion is directed to situations where the defendant stands on a demurrer to the State's evidence. In this case it happens the defendant did not do that. He produced a witness who testified briefly on the merits, and again interposed a demurrer at the close of the whole case. Does that fact make any difference? We think not. By so doing he was not put in the situation of admitting the State had made a prima-facie case: he merely exposed himself to the hazard of helping the State and of having his second demurrer measured by all the evidence on both sides. [Riley v. O'Kelly, 250 Mo. 647, 660, 157 S. W. 566, 569; State v. Jackson, 283 Mo. 18, 24, 222, S. W. 746, 748.]

■ The testimony of the defendant's only witness did not help the State, so the single question presented is whether the defendant's failure to produce evidence explaining his possession of the liquor, after he had entered the arena by adducing testimony in his own behalf, raised a prejudicial inference against him which made the State's showing good as against his demurrer at the close of the whole case. We think this question must be answered in the negative. Such an inference will not supply a missing link in an adversary's case but goes rather to the credibility and probative force of the evidence offered. [Guthrie v. Gillespie, 319 Mo. 1137, 1146, 6 S. W. (2d) 886, 889.] Furthermore, before the inference would be authorized in any case, it must appear, as declared in the Milstead case, supra, that the explanatory evidence exists and is more accessible to the defendant. In 16 Corpus Juris, section 1023, page 541, the following is stated:

"The neglect or failure of accused to call as witnesses those who could testify of their own knowledge as to material facts raises no presumption of law that, if called, they would have testified unfavorably to him and while the jury may consider his failure to produce or his endeavor to produce such evidence as a circumstance in determining his guilt, and may draw inferences therefrom, this doctrine is to be applied cautiously, and only where it is manifest that the evidence is in the power of accused to produce and is not accessible to the prosecution, the rule that no unfavorable inference can be drawn from the failure to produce or to examine a witness who is equally accessible to both parties being applicable in criminal as well as in civil cases." [See, also, 2 R. C. L. sec. 28, p. 429.]

In applying the foregoing rule in a circumstantial evidence case there must be some factual showing, on one side or the other, of the existence of the explanatory evidence and of its greater accessibility to the defendant. These matters cannot be left to suspicion and conjecture any more than any other element of the proof. We cannot erect a structure of superimposed inferences, first, of the exist-

ence of the evidence, then that the defendant could more easily have produced it, and finally that his failure to do so was because it would have been unfavorable to him. Any other doctrine carried to its logical conclusion would force the defendant to take the affirmative in his own defense on an issue based on mere speculation. In the Janes and Smith cases several witnesses were mentioned in the record who might have testified, though it would seem they were equally available to the State. In the instant case, so far as the record shows, there was no nonappearing witness who knew anything about the facts except the defendant's wife. Under the statute he was entitled to go to the jury unprejudiced without her testimony. [Sec. 3693, R. S. 1929.] On the evidence adduced there was no direct proof of transportation, and no basis for a fair inference that the liquor must have been in defendant's car when it drove up to Dew Drop Inn half an hour before the arrest. We think the defendant's demurrer at the close of the whole case should have been sustained.

█ III. The defendant complains of the admission of the evidence that a search warrant had been issued for his home. The court carefully excluded testimony of this character until the third witness was on the stand, and then let it in. We think the assignment is good. It may be conceded, for argument's sake, that if there had been a real issue before the court as to the sheriff's right to search the defendant's *car* sixteen miles from his home, and the State was contending that in so doing the officers acted on information reasonably inducing a belief that the defendant was committing a felony—then, perhaps the evidence concerning the search warrant would have been competent, with other evidence, as tending to justify that belief. But no such issue was in the case, as we have held, because the defendant failed to file a motion to suppress the evidence. In that situation, the search warrant had nothing to do with the case on trial.

We do not mean to say, however, that evidence unearthed at the defendant's home tending to show he had transported or was transporting the liquor found in his car, would be incompetent; and in case a motion were made attacking that evidence on the ground that it had been obtained by an illegal search, of course the search warrant would become material.

For the reasons given the judgment is reversed and the cause remanded. All concur.