THE STATE v. HARL, *Appellant.*

Division Two, February 2, 1897.

1. **Criminal Practice**: FORGERY: NAMES: VARIANCE. On an indictment for uttering a forged note purporting to have been signed by "J. Mugumry" evidence that defendant stated the note had been signed by J. H. Montgomery is admissible.

2. ———: ———: ———: ———. While the variance would be fatal at common law, such is not the case under Revised Statutes, 1889, section 4114, which provides that a variance in names shall not be deemed a sufficient ground for acquittal unless the trial court shall be of the opinion that it is material and prejudicial to the rights of the defendant.

3. ———: INSTRUCTION: PUNISHMENT. An error in instructing the jury as to the punishment *held* cured by sentencing the defendant to the *minimum* term imposed by the statute.

*Appeal from Sullivan Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*J. M. Swallow* and *D. M. Wilson* for appellant.

(1) The charge of uttering a forged note purported to have been made by "J. Mugumry" is not supported by proof of one purported to be executed by J. H. Montgomery. The variance was fatal. (2) The court erred in giving instructions at the instance of the state. (3) The court improperly overruled the motion for a new trial. The first instruction given for the state improperly declared the law as to the punishment. The court did not cure the error by afterward fixing the punishment at the minimum. But the instruction had prejudiced the defendant in that it had affected his credibility, as the jury would be less likely to believe a

man charged with a greater offense, than one charged with a lesser offense. And on the testimony of the defendant alone in this case rested in a great measure his defense.

*R. F. Walker*, attorney-general, and *Morton Jourdan*, assistant attorney-general, for the state.

(1). The testimony in this case shows clearly the guilt of the defendant, his admission, his flight, together with all the other facts proved by the state, left no question as to his guilt; hence the court very properly overruled the defendant's demurrer to the testimony. (2) The instructions upon the part of the state are in the usual forms, nothing experimental about them, and clearly define the law applicable under the indictment and the testimony. Instructions numbers 11 and 12 asked by the defendant were properly refused. Neither of them correctly declared the law. *State v. Gullette*, 121 Mo. 455. (3) It was no objection that the defendant had crudely written or misspelled the name Montgomery; no matter how defective the act of the defendant, it does not lie in his mouth to claim immunity for his crime. *Garmire v. State*, 104 Ind. 444.

Burgess, J.—At the May term, 1896, of the circuit court of Sullivan county the defendant was convicted of uttering, publishing, and exchanging a forged promissory note for the sum of $200, under an indictment theretofore returned by the grand jury of said county against him and his son, G. W. Harl. His punishment was fixed at two years' imprisonment in the penitentiary. From the judgment and sentence he appealed.

On the eighth of August, 1894, the defendant and his son, G. W. Harl, applied to one Alec Harmon of

Sullivan county for the loan of $200, offering to give a chattel mortgage upon some personal property to secure its payment. Harmon declined the security offered, but stated to defendant and his son, if they would get one of three men in the neighborhood on the note that he would loan them the money. Defendant asked him if James Montgomery, a farmer living in the neighborhood, would do, and was told by Harmon that he would. Defendant and his son then left Harmon's place and returned on the tenth day of the month with a note calling for $200 signed by defendant and his son, and purporting to be signed by "J. Mugumry;" Harmon then asked them if Jim Montgomery signed the note, and if "J. Mugumry," whose name was signed to it was the James Montgomery who lived in the neighborhood, to both of which inquiries defendant answered "yes;" thereupon Harmon drew his check upon the Browning Savings Bank payable to defendant for the money which was paid to him by the bank upon presentation of the check.

It was shown upon the trial that defendant went to James Montgomery and asked him to sign the note and that he declined to do so. And that after he was arrested on the charge he stated that Jim Montgomery signed the note.

After defendant's arrest, and after he was committed to the jail of said county, he broke jail and fled to the Indian Territory, where about eleven months next thereafter he was apprehended.

Defendant testified as a witness in his own behalf, and stated that it was his son who borrowed the money from Harmon, and that he took the note and claimed to have gotten James Montgomery to sign it; that he was present when his son delivered the note to Harmon, and received in lieu thereof Harmon's check for

the money. Defendant proved a good character for honesty prior to the transaction out of which the controversy arose.

After the evidence was all in defendant asked an instruction in the nature of a demurrer to the evidence which was refused, and he saved his exceptions.

It is claimed upon the part of defendant that there was no evidence to support the verdict.

The indictment charged the defendant and one G. W. Harl with feloniously uttering and selling to one A. C. Harmon a certain falsely made and forged promissory note purporting to be made and executed by one J. Mugumry, for the payment of $200, with intent to defraud, etc. It contained no averment that the note purported to be made by J. H. Montgomery by the signature J. Mugumry; nor that it was intended by the defendant that the signature J. Mugumry should be received by Harmon as importing an obligation by J. H. Montgomery; nor did it aver that it purported to be made by J. H. Montgomery under the name of J. Mugumry.

All the evidence adduced in support of the indictment showed that the note was to be signed by J. H. or Jim Montgomery, and that defendant stated to Harmon that it was Montgomery's signature to the note when he and his son delivered it to Harmon and in consideration therefor received Harmon's check for the money.

Therefore, unless the words Mugumry and Montgomery are *idem sonans* there was a fatal variance in the name used in the indictment, and the evidence introduced on the part of the state.

The generally accepted doctrine is, that if the distinction in the pronunciation of the names is indistinguishable in ordinary conversation, the doctrine of *idem sonans* applies. *Barnes v. People*, 18 Ill. 52. And it

makes no difference that the names may have been spelled slightly different, so that they are of the same sound.

But Mugumry and Montgomery have not the same sound, nor are they spelled alike.

The variance would be fatal at common law but we do not think it so under section 4114, Revised Statutes 1889. That statute reads as follows:

"Whenever, on the trial of any felony or misdemeanor, there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, in the Christian name or surname, or both Christian name and surname, or other description whatsoever, or any person whomsoever therein named or described, or in the name or description of any matter or thing whatsoever therein named or described, or in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant."

The statute is very broad in its terms. Under it it is for the trial court to determine whether the variance is material or not and prejudicial to the rights of the defendant on trial. If it appears to the trial judge that the defense is misled by reason of the allegation in the indictment and the evidence adduced in support thereof, it is the duty of the court to give him the benefit of the variance and direct an acquittal.

But when we look at the circumstances disclosed by the evidence, it seems quite clear that the variance could not, and did not, in fact, in any way prejudice defendant's defense. While the court did not directly

rule upon the question, ''it is to be presumed from the action of the trial court in refusing defendant's demurrer to the evidence, that in the judgment of the court the variance was immaterial, or not prejudicial to the defense.'' *State v. Myers*, 82 Mo. 562. See, also, *State v. Wammack*, 70 Mo. 410; *State v. Barker*, 64 Mo. 283; *State v. Sharp*, 71 Mo. 218; *State v. Smith*, 80 Mo. 516; *State v. Ward*, 74 Mo. 253; *State v. Nelson*, 101 Mo. 477.

Instructions like the third instruction given upon the part of the state have frequently been criticised by this court, but it has never been held that a judgment should be reversed upon the sole ground of the giving of such an instruction.

Under sections 3641 and 3646, Revised Statutes 1889, defendant was clearly guilty of forgery in the third degree, the punishment for which is imprisonment in the penitentiary not exceeding seven years. Sec. 3656. It follows that the first instruction given upon the part of the state, in so far as it told the jury if they should find the defendant guilty they would assess his punishment at imprisonment in the penitentiary for a term not exceeding ten years nor less than five years, was erroneous. The instruction was otherwise correct, and when the court came to pass judgment on defendant it reduced the punishment to the minimum fixed by statute, that is, at two years' imprisonment in the penitentiary, and thereby cured any reversible error in the instruction with respect to the punishment. *State v. Tull*, 119 Mo. 421.

It is, however, argued by counsel for defendant that as defendant's conviction or acquittal depended largely on his evidence, that the jury would be less inclined to believe the testimony of one whose punishment, if guilty, could not be less than five years and might be ten, than

the testimony of one whose least punishment could be only two years, and the maximum seven years; but we are not impressed with the force of this argument. On the contrary our observation has been the greater the punishment the more reluctant juries are to convict, and such reluctance not unfrequently results in an acquittal when there should be a conviction.

Finding no reversible error in the record the judgment is affirmed. All of this division concur.