THE STATE v. W. H. (BILL) KROEGER, Appellant.—13 S. W. (2d) 1067.

Court en Banc, February 11, 1929.

1064

*Roy W. Rucker* for appellant.

*Stratton Shartel,* Attorney-General, and *H. O. Harrawood,* Assistant Attorney-General, for respondent.

BLAIR, J.—Defendant was convicted in the Circuit Court of Pettis County of the felony of selling corn whiskey, in violation of Section 21, Laws of 1923, page 242. The jury assessed his punishment at imprisonment in the state penitentiary for a term of two years. He was sentenced on such verdict and has appealed to this court. A dissent in Division Two brought the case here.

The sole ground for reversal of the judgment urged by counsel is that the trial court should have directed a verdict of not guilty on the ground that the evidence failed to prove that defendant sold corn whiskey, as charged in the indictment. This makes necessary a brief statement of the evidence.

The indictment charged the date of the alleged sale as "on or about the —— day of November, 1926." Four young men testified. They were Jewell Hull, seventeen years old; Jack Yeater, sixteen years old; Tom Yeater, fifteen years old, and Earl Romig, whose age does not appear. Jack and Tom Yeater were brothers.

Jewell Hull testified to the purchase of a pint of "whiskey" at a filling station in Sedalia, operated by one "Big Bill." There was testimony tending to show that defendant and Big Bill were one and

the same person. Hull failed to identify defendant as the person who sold the liquor. He fixed the time of the sale as sometime after dark on a Saturday night in the summer time in 1926, about "fair time." (Evidently referring to the Missouri State Fair.) He said the boys present beside himself were Sam Freund, Jack Yeater and Earl Romig. Hull's testimony did not tend to show a sale of whiskey by defendant, or that the whiskey sold was "corn whiskey," as charged in the indictment.

Earl Romig testified to the purchase *from defendant* at the same filling station of a pint of "whiskey." He fixed the time as a Saturday night about eleven o'clock "sometime last fall" (1926). He said it was after "fair time." He gave the names of those present besides himself as Jewell Hull, Jack Yeater and Casey Morris. If he was testifying about the same sale to which Jewell Hull testified, he substituted Casey Morris for Sam Freund as one of those present. Neither Morris nor Freund testified. Romig's testimony tended to prove that defendant sold whiskey, but failed to prove a sale of corn whiskey.

Jack Yeater testified that he was present twice when whiskey was purchased at Big Bill's filling station. He gave no details about the first sale, but fixed the date of the last one as September (1926), about 6:30 or 7:00 o'clock on a Saturday night. He said that the sale of a quart of "whiskey" occurred at that time. He refused to swear that the sale was made by defendant and failed to testify that the liquor was corn whiskey. He said the boys present at that time besides himself were Jewell Hull, Tom Yeater and Sam Freund.

Tom Yeater testified that he was present at the filling station only once when liquor was purchased and gave the same names mentioned by Jack Yeater as comprising those present. He said they bought a quart of "corn whiskey, supposed to be." While this testimony may be said to tend to prove a sale of corn whiskey, the witness testified positively that defendant was not the man who sold the corn whiskey.

Jewell Hull and Earl Romig apparently were testifying about two separate sales, because the one said Sam Freund was present and the other said Casey Morris was present and neither testified to the sale of corn whiskey by defendant. Romig's testimony tended to show a sale of "whiskey" by defendant. Hull failed to identify defendant as the man making the sale of whiskey concerning which he testified. Even though we take the testimony of Tom Yeater as sufficient to prove a sale of corn whiskey, that witness denied that defendant made such sale. Jack Yeater apparently was testifying to the same sale. At least the jury might have found so. Yet, Jack Yeater's testimony was not sufficient upon which to base a finding that defendant made the sale.

We have carefully studied the brief record in this case and must conclude that, while the evidence was sufficient to authorize the jury

to find that defendant sold whiskey at the time and place alleged in the indictment, it was not sufficient to prove that the whiskey so sold was corn whiskey. It only remains then to determine whether proof that defendant sold "whiskey" is sufficient to support his conviction upon the charge of selling "corn whiskey."

Section 21, Laws of 1923, page 242, makes it a felony for any person to sell "hootch," "moonshine," "corn whiskey." These beverages had previously come within the term "intoxicating liquors," the sale of which was made a misdemeanor by Section 6588, page 414, Laws of 1921 (Regular Session). The sale of intoxicating liquor, except hootch, moonshine or corn whiskey, is still only a misdemeanor in this State. The 1921 Act was not repealed by the 1923 Act, except in so far as conflict exists between the two acts and except as to the particular sections expressly named in Section 29, Laws 1923, page 247.

The sale of intoxicating liquor is a felony only when the liquor so sold is hootch, moonshine or corn whiskey. We have ruled that "moonshine" is whiskey unlawfully manufactured. [State v. Pinto, 312 Mo. 99, l. c. 109, 279 S. W. 144; State v. Griffith, 311 Mo. 630, l. c. 641, 279 S. W. 135.] By the express language of Section 21, page 242, Laws of 1923, the sale of corn whiskey lawfully manufactured, transported or sold, does not come within the inhibition of said section and hence its sale is not a felony. It necessarily follows that the sale of whiskey, including corn whiskey, which has not been unlawfully manufactured, is still only a misdemeanor.

Appellant was charged with the felony of selling corn whiskey, which means the selling of corn whiskey unlawfully manufactured. If the proof had been that appellant sold corn whiskey, it would have been for him to offer evidence tending to prove that the whiskey so sold was lawfully manufactured. [State v. Naething (Mo. Sup.), 300 S. W. 829, l. c. 832; State v. Gatlin (Mo. Sup.), 267 S. W. 797.]

Likewise, upon a charge of selling "moonshine," if there was evidence tending to prove that the liquor sold was in fact moonshine, the State would not be required to prove, as a part of its case, that such whiskey was unlawfully manufactured. The negativing of that fact would also be a matter of defense for the accused.

Going a step further, it would seem that, if the proof was that the whiskey sold was in fact unlawfully manufactured, such proof would sustain the charge of selling "moonshine," because all unlawfully manufactured whiskey is "moonshine." [Pinto and Griffith cases, supra.] But it is inconceivable that mere proof by the State that the accused sold whiskey would be sufficient to put the burden upon the accused of showing that such whiskey was lawfully manufactured, in order for him to escape conviction for a felony, or that, by reason of such proof alone, the grade of his offense, and hence the character of his punishment, could be made to depend upon the success of his effort to convince the jury that such whiskey was lawfully manu-

factured. The State must prove, as part of its case, that the liquor sold was of the character described in Section 21, Laws of 1923, page 242, before it is entitled to convict the accused of a felony. If the charge be selling "moonshine," the proof must be that the liquor sold was moonshine or was whiskey unlawfully manufactured. If the charge be selling "corn whiskey," the proof must be that the liquor sold was in fact corn whiskey.

Here the only charge was selling "corn whiskey," not "hootch" or "moonshine." The terms are not synonymous. [State v. Pinto, supra.] Though we should hold, as it seems we could not properly hold, that mere proof of a sale of whiskey would be sufficient to support a charge of selling "moonshine," yet even then such proof clearly would not be sufficient to sustain a charge of selling corn whiskey.

Such is this case. The proof that appellant sold whiskey, without evidence tending to show the character of such whiskey, was proof tending to show that appellant was guilty of a misdemeanor only. He was therefore improperly convicted of a felony under such proof made. [State v. Gatlin, supra; State v. Stratton, 316 Mo. 240, 289 S. W. 568.]

The judgment is reversed and the cause remanded. *Ragland, Atwood, Gantt* and *Frank, JJ.,* concur; *White, C. J.,* concurs in a separate opinion in which *Ragland, Gantt* and *Frank, JJ.,* concur; *Walker, J.,* dissents in a separate opinion.

WHITE, C. J. (concurring).—I concur in reversing and remanding as decided in the divisional opinion. The dissenting opinion in division insists that we reject a construction of the Act of 1923, to which we have consistently adhered since its enactment.

The defendant was convicted of a felony, and the proof showed that he had committed only a misdemeanor. He sold a pint of whisky and for that transaction was assigned a residence of two years in the penitentiary. He did not manufacture whisky and there is nothing to show that the pint sold was unlawfully manufactured, a fact which the State must prove before he could rightly be convicted of a felony. For aught that appears, it was manufactured lawfully and was lawfully in defendant's possession, in which case his offense in selling it for beverage purposes was a misdemeanor only, as we have heretofore always held.

Defendant was not in the whisky business. He was operating a garage. This was his first and only offense, so far as the record shows. There was some indefinite evidence of another sale at that same garage, at some indefinite time, but the evidence does not connect defendant with it.

With the evidence in its possession the State had grounds to issue a search warrant to find out whether his garage was used as a hiding place for illicit whisky, but no effort was made to ascertain the facts about it. The prosecutor in examining his witnesses carefully avoided asking any question which might reveal the origin of the stuff sold.

Before we inflict punishment such as is meted out to one convicted of manslaughter or burglary, the State should *prove* the offense was one for which the lawmakers have provided that severe penalty. A felony charge carries certain serious incidents: the right of an officer to arrest on information without a warrant, and to shoot in preventing an escape.

It seems necessary to go into the history of the prohibition enactments, and the decisions construing them.

By the Act of 1919, embodied in Article VII, Chapter 52, Revised Statutes 1919, the Legislature enacted a comprehensive prohibition law in accordance with the Volstead Act.

In 1921, Section 6588, which appears in said Article VII, was amended, making it unlawful for "any person, firm, association or corporation, his, its or their agents or employees, to manufacture, sell, possess, give away or transport intoxicating liquors."

The General Assembly of 1923 undertook a modification of the law, repealing a number of sections in Article VII, but leaving Section 6588 still in force, and dealing specifically with many varieties of manufacture, sale, etc., of intoxicating liquor. Defendant was charged with the sale of corn whisky under Section 21 of that act which provides:

"If anyone shall manufacture, make, brew, etc., sell, give away or transport any hootch, moonshine, corn whisky (he) shall be guilty of a felony."

Then follows provision for punishment, the highest being five years in the penitentiary.

While Section 6588 covers every kind of intoxicating liquor, it is perfectly evident that said Section 21 was intended to lift out of that general designation certain kinds of liquor, and provide for severer punishments.

Why should the Legislature use the words "hootch, moonshine corn" in Section 21? Why didn't they simply use the word "whisky?" The lawmakers were persons of more than average intelligence and experience. They chose their language with some degree of care. Bills go through a committee which looks after the phrasing so as to make such bills convey their exact meaning. Why did they use that language if they intended it to mean nothing?

Neither the State's brief, nor the dissenting divisional opinion, has ventured an explanation.

A reasonable explanation of a law, so much more severe in the penalties inflicted than appears in the Volstead Act, is that the legislative intention was to strike at the root of the liquor business in its most pernicious form, break up moonshine stills and stop the transportation and marketing of their product.

The act makes other distinctions. The next preceding section, 20, declares it a felony with higher minimum punishment to manufacture, sell or give away, (etc.) hootch, moonshine, corn whisky, or

other intoxicating liquor "the drinking of any of which will cause the death of another," thus segregating such fatal beverages from *those of like name,* mentioned in Section 21. The distinction is only in the *effect* of the stuff sold, and the result would depend upon many factors, the constitution of the drinker, the quantity drunk, the previous habit, etc. Any moonshine in sufficient quantities might produce death. There are other distinctions in the use and possession of implements of manufacture, reclaiming alcohol, etc. I mention these to show that the Legislature was making fine distinctions in the endeavor to cover every form of liquor violation.

The purpose of Section 21 is explained with completeness and particularity in State v. Griffith, 311 Mo. 630, l. c. 641, opinion by Judge WALKER, in these words (some significant expressions I underscore) :

"(The legal, as well as the practical, effect of Section 21 is to *segregate* the *liquors therein named* from the general class and to *prescribe a heavier penalty for their* manufacture, sale, etc.)"

And then (l. c. 641-2) :

"(So far as concerns the legal propriety of the words 'hootch,' 'moonshine,' 'corn whisky,' in the information, used in conformity with the language of the statute, it may be said, although not given formal recognition by the lexicographers or embalmed in precedents, these words have, from continued use, become so embedded in our vernacular that their meaning is familiar to every one of general intelligence *as designating intoxicating liquor, illicitly distilled for beverage purposes.* . . .).

"Under such circumstances of what everybody else knows we may take judicial notice. It was proper, therefore, in charging an offense under the statute, *not only that the generic term 'intoxicating liquor' be employed but that the specific terms 'hootch,' 'moonshine,' 'corn whisky,' be used as definitive of the particular kind of such liquor sold.* The use of the words 'commonly called,' following the words 'intoxicating liquor' in the information, detract in no wise from the directness of the charge, but serves to bring them clearly within the purview of the provisions of Section 21. *These words, performing as they do the important function of identifying and classifying the offense, are as important as any other words required by the Constitution and the statutes to be used in denouncing the crime. Therefore it is a mere quibbling with words to decry their use.*"

If the words "hootch, moonshine, corn whisky" are used to "segregate" the liquors so named, and prescribe heavier penalties for their manufacture, sale, etc., and if everybody knows they designate liquor *"illegally distilled,"* then they could not apply to the sale for beverage purposes of whisky lawfully distilled.

In charging a sale in violation of Section 21, those specific terms must be used. Has it come to this: that while an information must state facts which constitute a crime, it is no longer necessary to prove

those facts? If a felony case may be made out by simply proving a defendant sold whisky, why was it necessary to allege that he sold a specific kind of whisky?

The ordinary definition of "moonshine" applied to liquor is whisky manufactured illegally. The word "hootch" carries with it a significance of law-defying origin. In order that *no* mistake might be made, the Legislature added to Section 21 a proviso that "it shall not apply to corn whisky lawfully manufactured, transported or sold." Thus the proviso limits the application of the section to whisky unlawfully manufactured. It could not under any circumstances apply to any unlawful dealing with liquor lawfully manufactured. If this was not the plain intention of the lawmakers, then language cannot express an intention. Under the proviso to Section 6588, and under Section 6592, as amended in 1921, one may possess intoxicating liquor in his home, if it has been lawfully acquired and is being lawfully used. A physician may possess and prescribe it by the laws of the United States Government. That, of course, could only be liquor lawfully manufactured, yet any of such whisky lawfully manufactured might be unlawfully sold. If a druggist who rightfully possesses such whisky should sell a pint for beverage purposes would he be guilty of selling moonshine, hootch or corn whisky, as described in Section 21? Would anyone who might sell such liquor? Never up to this time has such a sale been characterized as other than a misdemeanor meriting a fine or jail sentence and not a term in the penitentiary. The Attorney-General in the oral argument frankly admitted that such sale would be a misdemeanor, but contended that the fact must be proven as a defense. That is to say, one charged with a crime must assume the burden of proving his innocence, and the presumption of guilt instead of innocence attends him. If one is charged with feloniously stealing money the State does not make out a case by proving merely that the defendant stole money. It must go further and *prove* that the money amounted to thirty dollars or more. Otherwise the offense is a misdemeanor, not a felony.

In order to remove any uncertainty about it, Section 22 of the Act of 1923, following Section 21, provides a punishment as for misdemeanor where any person is convicted of violation of any of the provisions of the act, or any of the provisions of Article VII, Chapter 52 (including Section 6588), "and where no different punishment is fixed." The section goes on to fix punishment for the first offense, a second offense and a third and subsequent offenses, with increasing severity for each successive offense, but it never gets to a penitentiary term. This would cover the case of a dealer in liquor, other than that mentioned in Section 21, who is convicted several times.

In State v. Pinto, 312 Mo. 99, decided at the same term as was State v. Griffith, supra, it was held that the words "moonshine," "corn whisky" and "hootch" as used in Section 21, were *not* synonymous (l. c. 109), because such a construction led to misunder-

standing and confusion, expressly overruling State v. Brown, 304 Mo. 78, on that point. All the Judges of Division Two concurred, yet the dissenting opinion in Division cites State v. Brown to show the words *are* synonymous. In that case we said (p. 108):

"The Legislature intended to distinguish between corn whisky, whose manufacture and sale was denounced as a felony, and other kinds of liquors, the manufacture or sale of which comes within the statute defining misdemeanors, and to grade the series of offenses which might be committed in connection with intoxicating liquor."
It was further said in that opinion (l. c. 109):

"The misdemeanor statute covers all kinds of liquors except those specifically described and provided for in the Act of 1923."

In these two cases, the Griffith case and the Pinto case, we attempted to set forth a complete analysis of the Act of 1923, and they have been referred to and followed from that time (1925) to this.

Up to the present time the rulings have been uniform that in order to convict one of selling hootch, moonshine or corn whisky the State must prove it. The reports are full of cases in which the circuit courts and prosecutors so interpreted the act; introduced experts who qualified before they testified to the quality of the liquor. They were either experts by chemical education, or by experience, as many sheriffs are. Some times the liquor is traced to the illicit still. But construing the act liberally we have consistently held evidence that liquor was of the *kind* usually manufactured illegally, made out a prima-facie case. Never before have we been asked to condemn as a felony a sale without the proof mentioned.

It is necessary to examine some of the cases deciding this point.

In State v. Stratton, 316 Mo. 240, the defendant was charged with giving away moonshine whisky. The proof showed that a person drove his horse and buggy to a field where the defendant and others were baling hay; the defendant took a bottle from this person's buggy, drank from it, put it between two bales of hay, and afterwards passed it around among his co-workers, giving them each a drink out of his bottle. There was no proof that the whisky which defendant passed among his associates was moonshine or any other whisky illegally manufactured. The court said (l. c. 242): "The indictment charged that the defendant gave away moonshine whisky. It was necessary for the State to prove that the liquor was moonshine whisky."

Moonshine, it was understood there, was any whisky illegally manufactured. The defendant was charged with a felony and convicted of a felony, when the proof at most showed only a misdemeanor. The sentence of two years in the penitentiary was reversed and the cause remanded, that the State might prove its charge or convict the defendant of a misdemeanor only. All the Judges of Division Two concurred in that result and in the reasons for it, following the distinc-

tion so carefully elucidated by Judge WALKER in the Griffith case, supra.

We might have reversed the judgment in that case on the ground that to "give away," condemned in the statute, means such giving away as conceals sale, and does not mean that punishment as for a felony should be inflicted for what defendant deemed a courtesy in dividing with his companions that infliction rather than bear it all himself. But that question did not enter into the case. It was decided squarely on the failure to prove the whisky was of the kind which the Legislature has declared it a felony to deal with in any manner. The punishment was so out of proportion to the offense proved that the Legislature could not have meant to have it inflicted in such a case.

In State v. Gatlin, 267 S. W. 797, the charge was the transportation of moonshine, corn whisky. Liquor was found in the defendant's car, but there was no proof that it was hootch, moonshine or corn whisky. The judgment was reversed and the cause remanded. Here again we followed the same distinction, all concurring except Judge WALKER, absent.

In State v. Bilyeu, 295 S. W. 104, the charge was the manufacture of "hootch, moonshine *or* corn whisky." It was held that the information was defective because hootch or moonshine might have been different from corn whisky, and being in the alternative it did not charge anything with definiteness. The judgment was reversed and the cause remanded. If whisky was whisky, with no distinction as to kinds, that judgment could not have been reversed. The ruling follows that in the Pinto case, that "moonshine" and "corn whisky" are *not* synonymous. All the judges of Division Two concurred.

State v. Wright, 291 S. W. 1078, is cited as in conflict with the ruling here. It was a case of sale. The charge was selling white corn whisky, and *that* was the proof. The opinion says (l. c. 1079) : "*The liquor was unlawfully manufactured whisky.*" Why should the court say that when the case was one of *sale?* Obviously, because it was necessary in order to sustain the charge. It was only the sale of whisky, unlawfully manufactured, that would make it a felony.

Some cases are cited in support of the conviction, but those are cases of *manufacturing* whisky, not sales. Under Section 21, manufacturing whisky unlawfully is always a felony. One of these is State v. Wright, 312 Mo. 626, written by RAILEY, C. By some mistake the concurring opinion of a majority of the court, who were not satisfied with some of Judge RAILEY's sweeping generalizations, was omitted from the official reports. It is reported in Southwestern, Volume 280, page 703. The charge was *manufacturing* "corn whisky," and proof showed manufacture of some kind of moonshine whisky. A felony was charged and a felony proven. The concurring opinion pointed out that, while the proof did not correspond with the charge, under Section 3907 at most it was a variance, which could

not be taken advantage of unless brought to the attention of the trial court and there deemed material. The leading opinion noted that defendant claimed he had committed only a misdemeanor while he was charged with a felony, and that his offense came properly within the terms of Section 6588, and says to that (l. c. 705): "It was not claimed that defendant had any authority for manufacturing corn whisky or any other kind of whisky." And, "Section 21, of the Laws of 1923 . . . was intended to cover every kind of unlawful *manufacture* of whisky." Nothing said about a sale. There could be no manufacture except feloniously. One *felony* was charged and a kindred *felony* was proved.

Another manufacturing case was State v. Sandoe, 316 Mo. 55, opinion written by RAILEY, C. The charge was manufacturing hootch, moonshine, corn whisky. The opinion says (l. c. 62): "Sheriff Smith testified that he tasted the whisky in controversy and *that it was corn whisky.*"

In State v. Vesper, 289 S. W. 862, the defendant was charged with manufacturing hootch, moonshine, corn whisky. The evidence showed he was reclaiming alcohol. The product could properly come under the designation of hootch or moonshine, though it could not properly be called corn whisky, again indicating that those terms are not synonymous. Judge BLAIR in writing the opinion said: "All intoxicating liquor *illegally distilled* for beverage purposes is hootch, moonshine or corn whisky." The word *"distilled"* confined the generalization to grain liquor, not lawfully manufactured.

In State v. Brock, 289 S. W. 48, opinion rendered by Judge BLAIR, this court again quoted the analysis of Judge WALKER in the Griffith case, as follows:

"It was proper, therefore, in charging an offense under the statute, not only that the generic term 'intoxicating liquor' be employed, but *that the specific terms 'hootch,' 'moonshine,' 'corn whisky,' be used as definitive of the particular kind of liquor sold.*"

In State v. Black, 289 S. W. 804, was where the charge was the sale of hootch, moonshine, corn whisky, and the *proof* was that the liquor *sold was corn whisky.*

In State v. Combs, 273 S. W. 1037, the defendant was charged with the felonious sale of moonshine, in violation of the Act of 1923. The opinion of Judge WALKER notes that an analysis was had by a witness who testified that the liquor sold contained 52 per cent of alcohol by volume, and that it could be designated as moonshine. The point made was the statute described no offense because the disjunctive "or" was omitted after "moonshine" and before "whisky." (We later supplied that word by construction.) In speaking of the next paragraph of this statute (l. c. 1039), the opinion says:

"One of these is corn whisky, which cannot be eliminated from the classification without doing violence to the purpose of the statute." And then continues further:

". . . we are not unmindful of the cardinal rules of construction applicable alike to all general statutes that it will not be presumed that the Legislature intended to enact an absurd law, incapable of sensible construction and practical operation."

One of the latest cases, State v. Cook, 3 S. W. (2d) 365, is where the defendant was charged with selling hootch, moonshine, corn whisky, and proof showed the sale of three pints of moonshine. The opinion, by Judge WALKER, in passing on the propriety of the demurrer to the evidence points out that the "liquor shown to have been sold was designated as moonshine or corn whisky," and it was held that those terms are known to every person of average intelligence, and *need not be defined* in an instruction.

That definite meaning could not be so well known unless those terms meant some specific *kind* of whisky. (See illuminating article on "Hootch, Moonshine and Corn Whisk" by Ben Ely, Jr., in Missouri Bar Bulletin for November 14, 1928, especially pages 15, 16, et seq.)

In all those cases a distinction was made between the *manufacturing* of liquor and the *selling* of liquor. Manufacturing unlawfully is always a felony and the sale of *such* liquor is always a felony, as we have frequently construed the Act of 1923. But a person might sell whisky for beverage purposes which was *not* manufactured illegally. In that case, Section 6588 would apply, as we have held numerous times. We are not responsible for that distinction between different classes of liquor. To introduce a different classification now would be to lead to confusion and would not aid in law enforcement. It would lead to more embarrassing distinctions.

If the interpretation contended for should obtain then we would wipe out by construction the words "hootch, moonshine, corn" standing in Section 21, and in other sections where these terms are used, leaving "whisky" standing alone unqualified, and repeal by construction Section 6588, so far as it affects whisky. We have never yet taken that liberty with a legislative enactment. With the construction of the statute to which we have so far adhered, the Legislature apparently has been satisfied, for they have not yet amended the Act of 1923 in that respect. If they desire to have the sale of any kind of whisky, or any kind of intoxicating liquor, adjudged a felony, they should amend the law to make it say so.

The definition of whisky contended for is "alcoholic liquor obtained by distillation of mash of fermented grain" of any kind. It is pretty well known that large quantities of *whisky* are manufactured illegally from potatoes, sugar beets and fruits. Under the definition quoted that could not come under the provisions of Section 21, whereas under the construction we have adopted it would be moonshine and its illegal manufacture would be a felony.

If we should adopt the construction contended for, hundreds of cases now disposed of as misdemeanors would come to this court, further overcrowding our docket.

The Legislature probably did the best it could in a difficult situation, with divergent popular views regarding the "best law" to be enacted. The "best law," of course, is the one which will most effectually accomplish the purpose intended. It is not necessarily the one which on paper looks most terrifying. Too severe penalties often defeat the law's purpose. The law should be interpreted with the view to give effect to the intention of serious-minded men who enacted it. We cannot charge them with an intention to enact a joke in using the words "hootch, moonshine, corn," and construe them to have no meaning. We certainly are not amiss in holding that a misdemeanor has been committed where the criminal act is not plainly called a felony.

For these reasons I concur in reversing the judgment and remanding the cause. *Ragland, Gantt* and *Frank, JJ.,* concur in these views.

WALKER, J. (dissenting).—I do not concur in the conclusion reached by my learned brother, Judge BLAIR, in holding that a charge of selling corn whiskey is not sustained by proof of a sale of whiskey.

I. In support of this holding the majority opinion cites State v. Gatlin, 267 S. W. (Mo.) 797, and State v. Stratton, 316 Mo. 241. In the Gatlin case the learned Commissioner urges no reason and cites no authority to sustain his conclusion, but simply declares that the evidence was that the jugs and jars transported contained whiskey and that this was no evidence that they contained corn whiskey, and hence the court erred in overruling a demurrer to the evidence.

In State v. Stratton, 316 Mo. 240, the charge was the giving away of moonshine whiskey and it was held that the proof that the whiskey was "as good as bottled in bond whiskey" would not sustain the charge. The indefiniteness of this testimony was sufficient to authorize this ruling without the implication that proof of the giving away of whiskey would not uphold a conviction.

Conceding, however, that these cases sustain the holding in the Kroeger case, I am of the opinion, both in reason and under the authority of other rulings of this court, that the holding by Judge BLAIR in the Kroeger case is too narrow.

Whiskey, as defined and as uniformly regarded in this country, is an alcoholic liquid obtained by the distillation of the mash of fermented grain, usually either corn, rye, wheat or barley. The term is, therefore, generic, and while the prohibitory statute is directed in terms against hootch, moonshine and corn whiskey, each of these is whiskey. The first being a slang designation of the general term; the second indicative of the time or conditions under which the liquor was made, and the third, the ingredient used in its manufacture. The purpose of the statute was evidently not to necessarily limit the prohibitory ban upon these liquors as specifically designated, but

to forbid the manufacture, possession, gift or sale of whiskey. Whether, therefore, it be called hootch, moonshine, booze, white mule, mountain dew or coffin varnish in the vernacular of the underworld, or that it was made in April's ivory moonlight, beneath the oak tree's shade, or that it was distilled from dextrose or the blood-quickening juice of the fermented corn, it is, in its last analysis and under its generic title, simply whiskey. In the instant case, therefore, where the sale charged was that of corn whiskey and the proof was that of the sale of whiskey, it should be held to be a felony, punishable under Section 21, Laws 1923, page 242. We have held, and I think correctly, that the terms used in the statute were synonymous (State v. Brown, 304 Mo. 78); or in other words, that they each designate spirituous liquor, illegally distilled or manufactured. [State v. Cook, 3 S. W. (2d) 365; State v. Vesper, 289 S. W. (Mo.) 862.] This holding was based upon the well founded reason that these terms were but specific designations of the general term, whiskey.

In State v. Wright, 312 Mo. 626, 280 S. W. 703, in which the opinion is subsequent to our ruling in the Gatlin case, we held where an information charged the manufacture of corn whiskey and the proof was that the defendant was guilty of manufacturing whiskey that a verdict and judgment was authorized convicting him of a felony under Section 21, Laws 1923, supra. The purpose of the law is clearly and wholesomely considered in the Wright opinion, to this effect: "that where an information charges the unlawful manufacture of hootch, moonshine, corn whiskey or any other kind, proof of the manufacture of whiskey, without designating the brand, will warrant a conviction of a felony." "We take" says that opinion "judicial notice of the fact, without allegation or proof, that whiskey is intoxicating liquor and that it is generally used as a beverage." The reasoning of the learned Commissioner (p. 632) is relevant in this connection in support of a conviction for the manufacturing of whiskey under the facts in that case, parallel with those in the Kroeger case.

In State v. Wright, 291 S. W. (Mo.) 1078, in an opinion by BLAIR, J., under a charge for the sale of corn whiskey, although it was shown that the defendant sold a witness white corn whiskey, this relevant comment was made by the learned author of the opinion: "Appellant told Curtis that he was making whiskey. The liquor was unlawfully manufactured whiskey. The foregoing testimony *alone* made a case to go to the jury on the second count, 'which charged an unlawful sale of corn whiskey.'"

The cases of the State v. Wright, 312 Mo. 626, supra, and that of State v. Griffith, 311 Mo. 630, 279 S. W. 135, are cited in support of the correctness of the conclusion relating to the sufficiency of the testimony in the last cited Wright case.

In State v. Vesper, 289 S. W. (Mo.) 862, a charge of manufacturing hootch, moonshine or corn whiskey was affirmed on proof of the un-

1078

lawful distilling of alcohol from denatured alcohol. In commenting upon the sufficiency of this testimony to sustain a conviction, Judge BLAIR said (p. 863) that: "All intoxicating liquor illegally distilled for beverage purposes is hootch, moonshine or corn whiskey." By parity of reasoning and in harmony with the purpose of the statute the converse of this conclusion is true, that the liquors designated in the information are whiskey.

In State v. Sandoe, 316 Mo. 55, 62, RAILEY, C., speaking for the court, in affirming a conviction under a charge for manufacturing hootch, moonshine or corn whiskey, in discussing the contention of the appellant "that there was no evidence given or offered by the State proving or tending to prove the intoxicating liquor alleged to have been made by defendant was corn whiskey," said: "Sheriff Smith testified that he tasted the whiskey in controversy and that it was corn whiskey. The evidence conclusively disclosed that defendant was engaged in unlawfully manufacturing whiskey. . . . It was immaterial whether he was making corn whiskey, as he was guilty if he made any kind of whiskey on said occasion. [State v. Wright, 280 S. W. 703; State v. Brown, 285 S. W. 995-6.]" Although the proof in the Sandoe case that the liquor made was corn whiskey, the reasoning and conclusion of the court is that if defendant made any kind of whiskey he was guilty, under the statute, and that it was unnecessary to prove that it was corn whiskey, despite the charge that he made hootch, moonshine and corn whiskey.

In State v. Black, 289 S. W. (Mo.) 804, in sustaining a conviction for felony under a charge of selling hootch, moonshine or corn whiskey, it was held (p. 805) that "we should take judicial notice that the words, 'hootch,' 'moonshine,' 'white mule,' etc., are generally used in connection with the unlawful manufacture of whiskey; that it was manifest the General Assembly intended to make it a felony in Section 21" (Laws 1923, p. 242) "for the unlawful manufacture of any kind of whiskey; and that an information under Section 21, which charges the defendant with unlawfully manufacturing whiskey sufficiently charges a felony; and that proof of such charge, is sufficient to sustain a conviction for felony."

In an opinion by Commissioner HENWOOD, State v. Wood, 321 Mo. 540, decided at this term, a defendant was convicted under a charge of manufacturing hootch, moonshine or corn whiskey. The conviction was affirmed although the proof simply showed that the defendant manufactured whiskey.

II. A casual consideration of this case may encourage the conclusion that, as Cicero said, it is an "Ex cloaca arcem facere." However, when the effect of a contrary ruling to that urged in this dissent is considered, the case becomes not a "mere fuss about trifles" but a matter of vital importance in the enforcement of the law. It is that with

which we are most concerned, subject of course to the canons of construction, in the interpretation of the statute. As if to impress the gravity of this duty upon the courts, the Legislature, in the first section of the statute, provides in effect that it was enacted for the protection of the economic welfare, peace, health, safety, and morals, of inhabitants, and that all of its provisions shall be liberally construed for the accomplishment of purposes, thereof (Sec. 1, Laws 1923, p. 237). Unless, therefore, we disregard, not only the spirit and the purpose of the law but ignore our numerous rulings that hootch, moonshine and corn whiskey are simply whiskey, we cannot refuse to uphold this verdict. In what possible manner can the defendant be prejudiced by the finding of the jury? That he sold whiskey was sufficiently shown to sustain his conviction. His crime, therefore, so far as the prohibition of the statutes is concerned, was as complete and its moral effect as damning as if the proof had been made that the sale consisted of corn whiskey. This court should be concerned only with the fact as to whether the error assigned is prejudicial. If not then its commission will not render a conviction erroneous. [State v. Allen, 246 S. W. (Mo.) 946.] Errors at most are only presumptively prejudicial, but are not so where the record, as at bar, shows that they deprived the defendant of no right under the law to which he was entitled in making his defense. If it be contended that there was a variance between the charge and the proof, it will be sufficient to say that it consisted wholly in the designation of the article charged to have been sold, and not its nature or substance. Under such a state of facts it cannot be held that the defendant suffered any prejudice from the character of the proof adduced to secure his conviction. [State v. Cutter, 318 Mo. 691.] When courts were more scholastic than rational and defendants were not permitted to have counsel, the practice grew up of treating every variance between the charge and the proof as prejudicial. In the light of a more intelligent administration of the criminal law and with a more considerate regard for the interests of the public, the courts, without disregarding the rights of defendants, have, when error is assigned, looked to the record to determine if any right to which a defendant is entitled has been denied to him and if not then the error assigned is not deemed prejudicial. We have shown that the variance between the charge and the proof could not have prejudiced any right to which the defendant was entitled in making out his defense. We regard, therefore, the error assigned in the majority opinion as not of a nature to authorize a reversal of this case.

I find upon an examination of the Wright case, 312 Mo. 626, 280 S. W. l. c. 706, by Commissioner RAILEY, as published in the S. W. Reporter, that my associates only concurred in the result reached in that case. While they held there was a variance between the charge and the proof as to the character of the liquor sold, that, under the provisions of Section 3907, Revised Statutes 1919, such a variance

did not constitute reversible error. The language of their concurrence was as follows:

"The proof in this case showed the manufacture of whisky which may or may not have been 'white corn whisky.' At most it was only a variance in the proof from the averments of the information. Under that statute, it cannot be deemed a ground for acquittal, because the trial court did not find it was material and the record does not show that the question was presented to or passed upon by the trial court. [State v. Harl, 38 S. W. 919, 137 Mo. l. c. 256.]"

If, under the record and the facts in the Wright case, supra, identical in all of their material features to those in the instant case, the variance was not material, by what process of reasoning can it now be held to be prejudicial in the instant case?

It is embalmed in the Proverbs that "in a multitude of counsellors there is safety." If precedent, the pole star of construction under our system of jurisprudence, is to be respected, it may be said with equal aptness that out of a multitude of like reasons is the wisdom of a conclusion rightly established.

I am of the opinion, therefore, that the judgment should be affirmed.