THE STATE v. JOHN R. McMILLEN, Appellant.—39 S. W. (2d) 559.

Division Two, June 5, 1931.

*Kyle D. Williams* and *C. E. Ernst* for appellant.

*Stratton Shartel*, Attorney-General, and *Henry H. Stern*, Assistant Attorney-General, for respondent.

HENWOOD, J.—On September 19, 1929, an indictment was returned in the Circuit Court of Gentry County, by which it is charged

that, on or about the first day of December, 1927, the defendant did unlawfully and feloniously sell one and one-half pints of "hootch, moonshine and corn whiskey." At the trial, on September 13, 1930, the jury found him guilty of selling corn whiskey, and assessed his punishment at a fine of $500. He was sentenced accordingly, and, in due course, appealed.

Earl Warren, the prosecuting witness, testified: He was employed by George Howery, on a farm, near Berlin, in the south part of Gentry County. In the morning of November 17, 1927, he and George Howery and Martin Rainey and Lloyd Henry drove, in Martin Rainey's automobile, from Berlin, several miles north, to Gentryville, in Gentry County, arriving there about ten o'clock that morning. He went, alone, into the defendant's restaurant, in Gentryville, and asked the defendant "if he had anything to drink." The defendant said he had "a pint and a half." He bought a pint and a half of liquor from the defendant, for which he paid the defendant $2.50. The liquor was in "ordinary liquor bottles." He put one of the bottles in the inside pocket of his overcoat and the other in one of the pockets of his overalls. Upon leaving the defendant's restaurant, he met his companions, but said nothing to them about the liquor. They then drove back from Gentryville, some distance south, to the home of Mrs. James Bunnell, where they attended a public sale. Shortly thereafter, he went, alone, into a barn, and began to drink the liquor. He became intoxicated, and "waked up" in Martin Rainey's "hay loft" about five o'clock that afternoon. He returned to George Howery's farm the next morning, and put "two-thirds of a half pint" of the liquor "over the door" in the barn. "The pint was all gone."

As to the character of the liquor, he was examined, and testified as follows:

"DIRECT EXAMINATION:

"Q. When he (the defendant) said he had a pint and a half, what, if any thing, did he say as to what it was? A. No, he just said it was liquor.

"Q. Now, have you—I will ask you if you have, on various occasions, drunk liquor and know the taste of liquor? A. *Well, no, I am not much of a judge of it; it all tastes alike to me.*

"Q. How? A. *It all tastes alike to me.*

"Q. Do you know the taste of corn whiskey? A. *Well, no, not just exactly.*

"Q. Well, what kind of a taste did this liquor have? A. Well, it was kind of a strong, fiery taste.

"Q. What color was it? A. White.

"Q. Have you seen liquor *that was represented to you* on other occasions as corn whiskey? A. Yes, sir. I have saw it that *they said* was corn whiskey.

"Q. Have you or have you not tasted other liquor *that was represented to you* as corn whiskey? A. Yes, sir.

"Q. I will ask you what color that was? A. It was white.

"Q. What was its taste as compared to this liquor you drank? A. Well, it was about the same.

"Q. Then, from your previous acquaintance with what you learned was corn whiskey, and its smell, what do you say that this liquor was that John McMillen sold to you? A. I would *take it to be* corn whiskey.

"CROSS-EXAMINATION:

"Q. Mr. McMillen didn't say anything to you about this being corn whiskey, did he? A. No, sir, he just said liquor.

"Q. Now, would you be willing to tell the jury, stating it a positive fact, on your oath, that you know this was corn whiskey? A. *Well, I don't know whether it was corn whiskey or what it was.*

"Q. You just know it was liquor? A. Yes, sir.

"Q. And intoxicating, and it might have been rye or it might have been any other sort? A. *It could have been.*

"Q. So, you are not intending to tell the court and jury, as a part of the fact, that you know, of your own knowledge, personal knowledge, that this was corn whiskey that you got of John McMillen? A. *I don't know what it was;* he just called it liquor.

"REDIRECT EXAMINATION:

"Q. Tell the jury whether or not there was any Government stamps on those bottles? A. There was not."

George Howery, son-in-law of the defendant, was called as a witness for the State, and testified: While he and Earl Warren and Martin Rainey and Lloyd Henry were driving north on the day in question, they met the defendant some distance south of Gentryville, driving south, "toward the sale," in a light colored coupe. He did not see the defendant in Gentryville. When he and his companions drove back, south, to Mrs. Brunnell's home, the defendant was there, attending the sale. While at the sale, he found Earl Warren in a barn, "pretty sick," but he saw no liquor on the trip, nor in his barn after the trip.

Sam Baxter and Charles Miller, also called as witnesses for the State, testified that the defendant's restaurant was closed, and that the defendant had gone to the sale, when Earl Warren and his companions arrived in Gentryville on the day in question. Miller further testified that Warren went to the defendant's restaurant, found it

locked, then came across the street to Baxter's barber shop, and asked if anybody had seen the defendant; that he told Warren the defendant had gone to the sale; that Warren asked him if he wanted "a little nip," but produced no liquor; and that Warren told him "that he could get $25 for any indictment that he would find against John McMillen."

The defendant stood on his demurrer to the evidence, and now contends that the evidence is insufficient to support the verdict.

It is our conclusion that this contention must be sustained. The unlawful sale of corn whiskey, of which the defendant has been convicted, is a felony under Section 4500, Revised Statutes 1929, originally Section 21 of the Prohibition Act of 1923 (Laws 1923, p. 242). The unlawful sale of intoxicating liquors other than hootch, moonshine and corn whiskey is a misdemeanor under Section 4481, Revised Statutes 1929, originally Section 6588, Revised Statutes 1919, amended in 1921 (Laws 1921, p. 413). "If the charge be selling 'corn whiskey,' the proof must be that the liquor sold was in fact corn whiskey." [State v. Kroeger, 321 Mo. 1. c. 1068, 13 S. W. (2d) 1. c. 1069.] While the testimony of the prosecuting witness is sufficient to warrant a finding that the defendant sold intoxicating liquor, it is not sufficient to warrant a finding that he sold "corn whiskey." True, when the prosecuting witness was asked, on direct examination, "what this liquor was," he said: "I would *take it to be* corn whiskey." However, he also said, on direct examination, that all liquor "tastes alike" to him, and that he did "not just exactly" know the taste of corn whiskey. It further appears, from his direct examination, that, when he undertook to say "what this liquor was," he was not testifying from his personal knowledge of corn whiskey, or from his personal experience in tasting or smelling corn whiskey, but from his previous acquaintance with liquor "that was represented" to him as corn whiskey. Moreover, when he was asked, on cross-examination, if he could say, from his personal knowledge and experience, "what this liquor was," he said: "Well, I don't know whether it was corn whiskey or what it was; it could have been rye or any other sort; I don't know what it was." According to his own admissions, he was not qualified to testify as to the character of the liquor in question, and, therefore, his testimony on that subject has no probative value. A conviction based upon such testimony will not be permitted to stand. [State v. Kroeger, supra, and cases cited.]

Other questions raised by the defendant on this appeal are not likely to arise at another trial, and, for that reason, need not be considered.

The judgment is reversed and the cause remanded. All concur.