THE STATE v. ODIE BUNCH, Appellant.—62 S. W. (2d) 439.

Division Two, June 24, 1933.

21

*Roy McKittrick*, Attorney-General, and *Wm. Orr Sawyers*, Assistant Attorney-General, for respondent.

ELLISON, P. J.—The defendant and Roy Rice were jointly charged by information in the Circuit Court of Webster County with selling one pint of "hootch, moonshine, corn whiskey," for the sum of one dollar. A severance was taken and on the trial of the defendant a jury found him guilty as charged, but stated in the verdict

they were unable to agree on the punishment. The court fixed it at two years' imprisonment in the penitentiary. The defendant has appealed but no brief has been filed in his behalf. The assignments of error in the motion for new trial in general are based on: the admission of incompetent evidence; the action of the court in assessing the punishment, excessive punishment, and the discovery of new evidence calling for another trial.

The evidence for the State was that the defendant and Rice went to the plant of the Marshfield Ice & Bottling Company about nine o'clock on the evening of September 19, 1931, and there sold to the prosecuting witness, Floyd Cantrell, a pint of corn whiskey in two soda pop bottles, for which he paid them a dollar. John McDaniel, marshal and night watchman at Marshfield, followed the defendant and Rice into the plant and from a position in the hallway saw the transaction. He immediately arrested the two boys and took possession of the liquor, which he produced at the trial. He said the defendant when arrested asked him how much he would take to release him and say nothing. The defendant's defense was that Cantrell, the prosecuting witness, was trying to sell the liquor to him, not he to Cantrell, when the marshal appeared on the scene. The defendant had never been arrested before and three witnesses testified to his good reputation for truth and industry. Other facts will be stated in the discussion of the assignments of error.

■ I. The first ground in the motion is that the prosecuting witness was permitted to testify the liquor he purchased from the defendant was corn whiskey, notwithstanding it was shown he was not qualified to answer as an expert on that subject. On direct-examination he answered without objection that he could tell by the taste of the liquor it was whiskey. This was the only question asked him at that time. On re-cross examination the following occurred:

"By the Court: Q. What kind of liquor do you say was in that bottle?

"By the Witness: A. Corn liquor.

"By Mr. Holt: We object to that; pardon me, I don't like to object to a question the court has asked, but this witness has not qualified to answer what kind of liquor it was.

"By the Court: Overruled (exception saved.)

"By the Court: Q. You tasted it, you say?

"By the Witness: A. Yes, sir.

"By the Court: Q. Had you ever tasted what was called corn liquor before?

"By the Witness: A. Yes, sir.

"By the Court: Q. In your judgment that was corn whiskey?

"By the Witness: A. Yes, sir."

Defendant's counsel then resumed his cross-examination as follows:

"Q. Where did you taste this whiskey you thought was corn whiskey? A. On that night?

"Q. You told the Court, the Judge here, you had tasted whiskey before that you thought was corn whiskey. Where did you taste that whiskey you thought was corn whiskey, prior to that time? A. Well, I tasted it before it went dry, and I have tasted it since.

"Q. When did it go dry? A. Well, I was pretty small, but I can remember when I could go to Springfield and get it.

"Q. How old are you now? A. Twenty.

"Q. And do you know what year it went dry in? A. It was about 1918, somewhere along there.

"Q. That has been about thirteen years, then? A. Yes, sir; I was pretty small.

"Q. And you have tasted it, then, before it went dry? A. Yes, sir, and my father kept it for medicine, and stuff like that.

"Q. And did he have to keep corn whiskey before it went dry? A. No, he didn't have to; it wasn't this stuff like they make now.

"Q. Well, was this stuff you tasted on the 19th day of September the same kind of stuff you tasted back in 1917? A. No, sir, it wasn't the same stuff it was at that time.

"Q. And you have tasted it and sampled it along since 1917, haven't you? A. Yes, sir, I tasted some of it.

"Q. You have tasted quite a bit of it. When was the last time you tasted it before this date, the 19th day of September? A. It was about four years ago.

"Q. About four years ago was the last time, prior to that? A. Yes, sir.

"Q. Now, at that time, do you know whether you drank corn whiskey or rye whiskey? A. Corn whiskey was what they called it; I don't known what it was made out of.

"Q. You don't know it, do you? A. I don't know it was corn whiskey, because I never saw it made.

"Q. You don't know what that was you drank over here on the 19th day of September, do you? A. It looked like what they call corn whiskey.

"Q. It looked like it, but do you know whether it was or not? A. Well, I never seen it made, or nothing of the kind.

"Q. You drink corn whiskey, or any other kind of whiskey, don't you? A. I haven't for about four years.

"Q. You hadn't drank any for about four years, up to that time? A. And I haven't drank any since.

"Q. You haven't drank any since the 19th of September? A. I tasted of it to see if it was corn liquor—to see if it was liquor.

"Q. You tasted it, but you didn't know it was corn liquor? A. Well, it tasted like corn liquor.

"Q. That you tasted four years ago, was it corn liquor? A. That is what they called it.

"Q. That is what they called it, but do you know it was corn liquor? A. I never saw any made.

"Q. Who called it corn whiskey? Who was over there—who said that was corn whiskey? A. Well, I don't know that anyone said it was corn whiskey; it was the color of corn whiskey.

"Q. No one said it was corn whiskey? A. No.·

"Q. And you don't know that it was? A. No, I never saw it made."

The question is close but in our opinion the court did not err in permitting the witness to answer, under the former rulings of this court. The weight and credibility of his testimony was for the jury. The showing made was stronger than in State v. McMillen, 327 Mo. 1189, 1191, 39 S. W. (2d) 559, where the proof was held insufficient; and more like that in State v. Dowell, 331 Mo. 1060, 55 S. W. (2d) 975; State v. Davis, 329 Mo. 743, 745, 46 S. W. (2d) 565, 566; State v. Howard, 324 Mo. 86, 94, 23 S. W. (2d) 16, 19; State v. Harris,· 324 Mo. 139, 143, 22 S. W. (2d) 1050, 1051; State v. Black (Mo. Div. 2), 289 S. W. 804, 806; State v. Brown (Mo.), 285 S. W. 995, 996.

In State v. Kroeger, 321 Mo. 1063, 1066, 13 S. W. (2d) 1067, 1068, where a witness testified he bought a quart of "corn whiskey, supposed to be" this court en banc said *arguendo* the testimony "may be said to tend to prove a sale of corn whiskey." It is not necessary that the witness see the liquor distilled or know its ingredients. It seems identification thereof as what is commonly known or understood to be hootch, moonshine or corn whiskey, by color, taste, smell and the like, is sufficient if the witness has a reasonable degree of familiarity therewith. In numerous cases such testimony has been admitted from lay witnesses though they spoke with some hesitation. [See 33 C. J. p. 773, sec. 526.]

II. After the cause had been submitted to the jury and they had reported back to the court that they had agreed upon a verdict of guilty but could not agree upon the punishment, the court gave them an additional instruction saying if they found the defendant guilty it was their duty to assess the punishment, but if they could not agree on the latter, they might return a verdict so stating in which event the court would fix the punishment. The motion for new trial does not complain of the form of the instruction but contends the court erred "in not submitting all the instructions to the jury when they retired to the jury room." The point is not well

taken. The court properly gave the supplementary instruction in the circumstances. The practice has the sanction of at least two decisions of this court: State v. Hubbs, 294 Mo. 224, 231, 242 S. W. 675, 677; State v. Levan, 306 Mo. 507, 515, 267 S. W. 935, 937.

III. When the verdict was returned the court inquired of the jury how they had stood on the question of punishment and the foreman replied "six stood for two years and six for a jail sentence." Counsel for defendant then requested the court to inquire how much of a jail sentence the six who were in favor of that had wanted to impose. The court replied "Well, I don't know that that would do any good." Thereupon the defendant objected and excepted. In his motion for new trial he asserts the refusal of the court to ask the latter question showed bias and prejudice. No complaint is made of the court's action in asking the first question—about how the jury stood. We see nothing in this contention. Under the statute, Section 3704, Revised Statutes 1929, since the jury had failed to agree on the punishment the duty to fix it devolved on the court. As an aid to the exercise of that discretion or out of curiosity he made the original inquiry but he was under no duty to pursue the question further.

IV. The next assignment is that "the court erred in allowing the State to prove over the objections of the defendant what Roy Rice said about delivering whiskey, after a severance had been granted." We find no such testimony in the record unless it be this. The State's witness Cantrell declared the defendant and Rice were at the ice plant in the afternoon before the sale was made in the evening; and that *they* said they had some liquor and would bring it later. The witness said the defendant was the one who made the statement, using the pronoun "we." Nowhere in the record is there any evidence that Rice made any statement about delivering liquor.

The assignment is not good for another reason. It is true that the State cannot use one codefendant, jointly charged, as a *witness* against another unless and until the case against the witness defendant has been *disposed of*. The fact that there has been a severance makes no difference. [Sec. 3691, R. S. 1929; State v. Reppley, 278 Mo. 333, 338, 213 S. W. 477, 479.] But that rule does not exclude proof adduced by the State from proper sources showing what both defendants did and said in each other's presence while acting together in the commission of the crime.

V. The next three assignments seek a new trial on the ground of newly discovered evidence. Each alleges that since the trial the defendant has been informed of certain facts which in one instance

would tend to corroborate the defendants; in another to impeach the State's witness Cantrell; and in the other to impeach the State's witness McDaniels. The name of the proposed new witnesses are not given, no diligence is alleged or shown, and the motion is not signed or verified by anyone or supported or accompanied by the affidavits of the witnesses or anyone else. For reasons stated in State v. Hohensee, 333 Mo. 161, 62 S. W. (2d) 436, handed down herewith, these assignments are wholly insufficient.

VI. The next assignment is that the punishment assessed, two years' imprisonment in the penitentiary, is excessive, particularly considering that the defendant was a first offender. Under the statute, Section 4500, Revised Statutes 1929, the punishment ranges from five years' imprisonment in the penitentiary down to a fine of $500 or imprisonment in the county jail between three and twelve months, or both. State v. Spano, 320 Mo. 280, 288, 6 S. W. (2d) 849, 852, holds a punishment of two years in the penitentiary for selling corn whiskey is not cruel or unusual, offending against Article II, Section 25 of the Constitution. The same was ruled in State v. Sheeler, 320 Mo. 173, 183, 7 S. W. (2d) 340, 343, where the term fixed was five years, the maximum, and it was further held the verdict alone did not indicate passion and prejudice. So, also, in State v. Webster (Mo.), 18 S. W. (2d) 28, 29, it was said a sentence of two years in prison does not indicate passion and prejudice, the maximum allowed by statute being five years. To us it seems, looking at the cold record, a penitentiary sentence for a first offender, a young man bearing a good reputation, is a little high. But in this instance the punishment was assessed not by a jury but by an able and seasoned circuit judge. We cannot know all the facts as he knew them, and cannot interfere.

VII. There is one other general assignment that the court erroneously admitted "incompetent, immaterial, irrelevant, improper and inadmissible evidence on the part of the plaintiff over the objections of the defendant." This is obviously insufficient under the statute, Section 3735, Revised Statutes 1929. We find no error in the record proper. The judgment must be and is affirmed. All concur.